No. 2014-1297

# In the
# United States Court of Appeals
## for the Federal Circuit

OPLUS TECHNOLOGIES, LTD.,

*Plaintiff-Appellee,*

v.

VIZIO, INC.,

*Defendant-Appellant,*

SEARS HOLDINGS CORPORATION,

*Defendant.*

Appeal from the United States District Court
for the Central District of California, Case No. 2:12-cv-05707
The Honorable **Mariana R. Pfaelzer**, Judge Presiding

## RESPONSE BRIEF OF PLAINTIFF-APPELLEE
## OPLUS TECHNOLOGIES, LTD.

RAYMOND P. NIRO
ARTHUR A. GASEY
KARA L. SZPONDOWSKI
DANIEL R. FERRI
NIRO, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733
rniro@nshn.com
gasey@nshn.com
szpondowski@nshn.com
dferri@nshn.com

*Attorneys for Plaintiff-Appellee,*
*Oplus Technologies, Ltd.*

Dated: October 6, 2014

## CERTIFICATE OF INTEREST

Counsel for the Plaintiff-Appellee Oplus Technologies, Ltd. certifies the following:

1.     The full name of every party or amicus represented by me is:

Oplus Technologies, Ltd.

2.     The name of the real party in interest represented by me is:

Oplus Technologies, Ltd.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

No publicly traded corporation owns 10% or more of Oplus Technologies, Ltd.

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Raymond P. Niro
Arthur A. Gasey
Kara L. Szpondowski
Paul C. Gibbons
Daniel R. Ferri
Gabriel I. Opatken
NIRO, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
(312) 236-0733

Sean M. Kneafsey
Shaun E. Swiger
KNEAFSEY AND FRIEND LLP
800 Wilshire Boulevard, Suite 710
Los Angeles, California 90017
(213) 892-1200

Joseph Re
Michelle Armond
KNOBBE MARTENS OLSON & BEAR LLP
2040 Main Street, 14th Floor
Irvine, California 92614
(949) 760-0404

Dated: October 6, 2014                    */s/ Kara L. Szpondowski*
                                          *Attorney for Plaintiff-Appellee,*
                                          *Oplus Technologies, Ltd.*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................ i

TABLE OF CONTENTS.................................................................... iii

TABLE OF AUTHORITIES ............................................................. vii

I.    STATEMENT OF RELATED CASES ................................1

II.    STATEMENT OF JURISDICTION....................................1

III.    STATEMENT OF THE ISSUE ..........................................1

IV.    STATEMENT OF THE CASE AND FACTS......................1

     A.    THE DISTRICT COURT DENIED VIZIO'S REQUEST FOR FEES ............................................5

     B.    VIZIO'S REFUSAL TO PROVIDE DISCOVERY AND OPLUS' FIRST MOTION TO COMPEL ........................8

     C.    ON APRIL 25, 2013, VIZIO FINALLY TELLS OPLUS AND THE DISTRICT COURT THAT NONE OF THE ACCUSED PRODUCTS WERE ON SALE AFTER THE FIRST AMENDED COMPLAINT WAS FILED ON DECEMBER 20, 2011 ........................................................................10

     D.    VIZIO WAS SELLING PRODUCTS WITH SILICON OPTIX HQV, MEDIATEK MDDI, AND/OR FAROUDJA DCDI CHIPS ......................................10

     E.    VIZIO PRODUCED NO COMMUNICATIONS WITH THE COMPANIES WHO SUPPLIED CHIPS USED IN ITS TELEVISIONS .....................................12

     F.    OPLUS HAD TO SEEK DISCOVERY DIRECTLY FROM THE CHIPMAKERS...............................12

G.    OPLUS WAS ALSO REQUIRED TO SUBPOENA RELEVANT EVIDENCE FROM A THIRD-PARTY ........................................................13

H.    OPLUS' SECOND MOTION TO COMPEL AND AMENDED INFRINGEMENT CONTENTIONS ..................14

I.    OPLUS' INVALIDITY EXPERTS DID NOT CONTRADICT EACH OTHER ...............................................17

V.    SUMMARY OF THE ARGUMENT.................................................18

VI.    STATEMENT OF STANDARD OF REVIEW ................................19

VII.    ARGUMENT ...................................................................................21

A.    THE DISTRICT COURT MADE NO LEGAL ERROR; IT SIMPLY MADE A DISCRETIONARY FINDING BASED UPON ALL THE EVIDENCE ...............................................21

B.    THE LEGAL STANDARD IS NOT "SHALL" AWARD, IT IS "MAY" AWARD ...........................................25

C.    THE DISTRICT COURT DID NOT HAVE ANY PERSONAL MANDATE AGAINST AWARDING FEES ...............................................27

D.    THE DISTRICT COURT CORRECTLY DECLINED TO AWARD FEES UNDER 28 U.S.C. § 1927...............................................29

E.    AN AWARD OF FEES AGAINST THE ENTIRE NIRO LAW FIRM WAS ALSO UNWARRANTED BECAUSE THE DISTRICT COURT FOUND MISCONDUCT ONLY BY A SINGLE ATTORNEY ...............................................34

F.    THE DISTRICT COURT ALSO CORRECTLY DECLINED TO AWARD FEES UNDER ITS INHERENT POWER...............................................37

G.  VIZIO HAS REPEATEDLY SOUGHT FEES AGAINST OPLUS AND ITS LAWYERS BY SELECTIVELY RELYING ONLY ON THOSE FACTS IT CONSIDERS FAVORABLE WHILE IGNORING THOSE THAT ARE NOT ...................................38

H.  THE DISTRICT COURT FOUND THAT OPLUS' CLAIMS HAD A REASONABLE BASIS IN FACT AND LAW ...................................40

    1.  Oplus' Direct Infringement Claims Were Supported Below ...........................................41

    2.  Oplus' Indirect Infringement Claims Were Also Supported In Fact And Law ...................................42

I.  OPLUS' INFRINGEMENT AND VALIDITY POSITIONS WERE NEITHER INCONSISTENT NOR FRIVOLOUS ...................................44

    1.  Oplus Did Not Take Contradictory Positions Regarding The "Absolute Value Of The Difference Between Two Spatial Pixel Values" ...........................................44

    2.  Oplus' Technical Experts Did Not Take Conflicting Positions Regarding The Absolute Value Operator ...................................45

    3.  Oplus' Expert Did Not Contradict Oplus' Infringement Theories ...................................46

J.  OPLUS DID NOT ABUSE THE DISCOVERY PROCESS ...........................................47

K.  OPLUS' SECOND MOTION TO COMPEL WAS REASONABLE ...........................................47

L.  OPLUS DID NOT ABUSE THE LITIGATION PROCESS ...........................................49

v

M.     OPLUS' CASE WAS NOT OBJECTIVELY
BASELESS ............................................................................50

VIII.  CONCLUSION ...................................................................................51

PROOF OF SERVICE ...........................................................................................52

CERTIFICATE OF COMPLIANCE .....................................................................53

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Chambers v. NASCO, Inc.*,
 501 U.S. 32 (1991) ............................................................................37

*Claiborne v. Wisdom*,
 414 F.3d 715 (7th. Cir. 2005) ..........................................................34

*Consolidated Aluminum Corp. v. Foseco Int'l. Ltd.*,
 910 F.2d 804 (Fed. Cir. 1990) ..........................................................26

*Diego, Inc. v. Audible, Inc.*,
 505 F.3d 1362 (Fed. Cir. 2007) ........................................................22

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*,
 524 F.3d 1254 (Fed. Cir. 2008) ........................................................50

*Fink v. Gomez.*,
 239 F.3d 989, 990-991 (9th Cir. 2001) .......................................32, 33

*Gardco Mfg., Inc. v. Herst Lighting Co.*,
 820 F.2d 1209 (Fed. Cir. 1987) ........................................................25

*Highmark, Inc. v. Allcare Health Management System, Inc.*,
 134 S.Ct. 1744 (2014)..............................................18, 19, 20, 25, 26

*Homeland Housewards v. Sotensen Research*,
 2013-1537, 2014 U.S. App. LEXIS 17300, at *8 (Fed. Cir. Sept. 8, 2014).......26

*ICU Medical, Inc. v. Alaris Medical Systems, Inc.*,
 2007 WL 6137003 (C.D. Cal. 2007) ...........................................28, 29

*IP Innovation LLC et al. v. Mitsubishi Elec. Corp. et al.*,
 Case No. 1:08-cv-00393 (N.D. Ill.) ...................................................13

*In re Keegan Mgmt. Co., Sec. Litig.*,
 78 F.3d 431 (9th Cir. 1996) .........................................................29, 30

*In re Oplus Techs., Ltd.Patent Litigation*,
   899 F. Supp. 2d 1373, 1374 (J.P.M.L. 2012) ........................................................3

*Korody-Colyer Corp. v. General Motors Corp.*,
   1984 WL 63132 (C.D. Cal. 1984) ......................................................................28

*L.A.Gear, Inc. v. Thom McAn Shoe Co.*,
   988 F.2d 1117 (Fed. Cir. 1993) .........................................................................25

*Lahiri v. Universal Music & Video Dist. Corp.*,
   606 F.3d 1216, 1222 (9th Cir. 2010) ................................................................33

*MarcTec, LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012) ..........................................................................37

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
   420 F.3d 1369 (Fed. Cir. 2005) ........................................................................20

*Micromash Tech. Corp. v. Am. Recreation Prods., Inc.*,
   2007 WL 2501783 (N.D. Cal. Aug. 30, 2007) .................................................32

*Montgomery v. Etreppid Techs., LLC*,
   2010 U.S. Dist. LEXIS 43304 (D. Nev. 2010).................................................34

*Nystrom v. Trex Co.*,
   424 F.3d 1136 (Fed. Cir. 2005) ........................................................................29

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   134 S. Ct. 1749 (2014)........................................................................18, 21, 25

*Oplus Techs., Ltd. v. Sears Holding Corp.*,
   2013 U.S. Dist. LEXIS 35474 (C.D. Cal. Mar. 4, 2013)....................................4

*Oplus Techs., Ltd. v. Sears Holdings Corp.*,
   2012 WL 2280696 (N.D. Ill. Jun. 15, 2012)......................................................2

*Oplus Techs., Ltd. v. Sears Holdings, Corp., et al.*,
   2013 U.S. Dist. LEXIS 145917 (C.D. Cal. Oct. 2, 2013) ..................................5

*Oplus Techs. Ltd. v. Sears Holding Corp.*,
   2013 U.S. Dist. LEXIS 132412 (C.D. Cal. Jan. 14, 2013).................................4

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*,
   781 F.2d 198 (Fed. Cir. 1986) ............................................................25

*Stragent, LLC v. Intel Corp.*,
   Case No. 6:11-cv-00421 (E.D. Tex. Aug. 6, 2014) ...........................21

*Trulis v. Barton*,
   107 F.3d 685 (9th Cir. 1995) ...........................................20, 31, 32, 38

**Federal Statutes**

28 U.S.C. § 1295(a)(1) ......................................................................1

28 U.S.C. § 1338(a) .........................................................................1

28 U.S.C. § 1407 ..............................................................................3

28 U.S.C. § 1927 ....................................... 1, 5, 6, 20, 25, 29, 30, 33, 34, 37, 38, 51

35 U.S.C. § 101 and § 112 ................................................4, 17, 23, 30, 50

35 U.S.C. § 102 ...........................................................................4, 17

35 U.S.C. § 285 ..................................... 1, 5, 6, 19, 22, 25, 28, 37, 38, 51

35 U.S.C. § 287 ............................................................................42

## I.    STATEMENT OF RELATED CASES

There are no pending cases related to this case.

## II.    STATEMENT OF JURISDICTION

This Court has jurisdiction over Oplus' appeal under 28 U.S.C. § 1295(a)(1). The district court's jurisdiction was properly based upon 28 U.S.C. § 1338(a).

## III.    STATEMENT OF THE ISSUE

Whether the district court abused its discretion in finding Vizio was not entitled to an award of attorneys' fees under 35 U.S.C. § 285, under 28 U.S.C. § 1927, or under its inherent power.

## IV.    STATEMENT OF THE CASE AND FACTS

On December 1, 2011, Oplus, an Israeli company, filed suit against Sears Holdings Corporation, headquartered in Hoffman Estates, Illinois, and Vizio, a California corporation, for infringement of its U.S. Patent Nos. 6,239,842 ("the '842 Patent") and 7,271,840 ("the '840 Patent"). The suit was filed in the United States District Court for the Northern District of Illinois. (A000068 at Dkt. 1). Nineteen days after filing its initial complaint, Oplus filed a First Amended Complaint (A000069 at Dkt. 14), attaching detailed claim charts (see A000576-A000582 and A000583-A000591) and alleging that Sears and Vizio infringed the '840 and '842 Patents through the sale of specific televisions incorporating specific

Silicon Optix HQV, Faroudja DCDi, and MediaTek MDDi video processing technology that permitted the televisions to practice the patented methods.

Neither Sears nor Vizio moved to dismiss Oplus' claims and Sears never complained that Oplus' infringement allegations were flawed or insufficient or that Oplus' claims were frivolous under Fed. R. Civ. P. 11. At that time, Vizio also never claimed it was no longer selling the accused televisions.

Before discovery began, Vizio moved to sever and transfer Oplus' claims against Vizio to the United States District Court for the Central District of California. (A000071 at Dkts. 36-38). The Illinois district court granted Vizio's motion on June 15, 2012 and stayed the case against Sears. *Oplus Techs., Ltd. v. Sears Holdings Corp.*, 2012 WL 2280696, at *8 (N.D. Ill. Jun. 15, 2012). (A000072-A000073 at Dkts. 44-48).

Oplus also had three other patent infringement cases pending in the United States District Court for the Northern District of Illinois, one against JVC Americas Corporation ("JVC") (Case No. 1:11-cv-09029), another against Funai Electric Co., Ltd. ("Funai") (Case No. 1:11-cv-09027), and a third against DM Holdings Inc. ("DM") (Case No. 1:11-cv-09017). Those cases involved allegations of infringement of the same '840 and/or '842 Patent(s) and the same video processing technology that was the basis for Oplus' infringement claims against Vizio. As a result of the common technology, legal issues and patents involved in

all four cases and, in an effort to avoid conflicting claim construction or validity rulings, Oplus filed a motion with the Judicial Panel on Multidistrict Litigation to consolidate the four actions for pretrial proceedings in the United States District Court for the Northern District of Illinois, 28 U.S.C. § 1407. (A000097 at Dkts. 1 and 2). Although this motion was denied, *In re Oplus Techs., Ltd. Patent Litigation*, 899 F. Supp. 2d 1373, 1374 (J.P.M.L. 2012). (A000101-A000102 at Dkt. 26), the Judicial Panel recommended the parties cooperate in all four cases to efficiently handle common discovery and legal issues. (A011062-A011063). As the Illinois district court held in rejecting Vizio's request for an award of fees, the MDL motion to consolidate related cases was neither unreasonable nor vexatious:

> [T]he Court cannot say that Oplus's motion to consolidate four separate cases with the Panel for Multidistrict Litigation was frivolous or sanctionable. The cases allegedly all involved the same patents and similar or identical technology and two of them already were pending in Northern District of Illinois in the initial stages of discovery. Although the MDL Panel denied Oplus's motion for consolidation, it did not suggest that the motion was frivolous, but rather noted that there was "factual overlap" amongst the various actions and encouraged the parties and the various courts to take steps to "minimize the potential for duplicative discovery and inconsistent pretrial rulings." Simply put, requesting that a case be consolidated for MDL proceedings falls short of an "act of misconduct," as suggested by Vizio.

(A011067).

Fact discovery in the transferred case began on August 7, 2012. Two days later, on August 9, 2012, Oplus provided its initial infringement contentions,

identifying fourteen Vizio television models that practiced the claimed methods. (A002009-A002076). The Court held a claim construction hearing on January 10, 2013 (A000079 at Dkt. 105) and issued its ruling on January 14, 2013. *Oplus Techs. Ltd. v. Sears Holding Corp.*, 2013 U.S. Dist. LEXIS 132412 (C.D. Cal. Jan. 14, 2013). (A000079 at Dkt. 104).

Before the California district court interpreted the patent claims, on January 7, 2013, Vizio moved for summary judgment on two grounds – that the asserted patent claims were invalid for indefiniteness under 35 U.S.C. § 112 and that the '840 and '842 Patents failed to claim patent eligible subject matter as required by 35 U.S.C. § 101. (A000078-A000079 at Dkt. 101). After briefing and argument, the district court denied both motions for summary judgment on March 4, 2013. *Oplus Techs., Ltd. v. Sears Holding Corp.*, 2013 U.S. Dist. LEXIS 35474 (C.D. Cal. Mar. 4. 2013). (A000080 at Dkt. 113).

On July 29, 2013, Vizio filed a second round of summary judgment motions – this time, moving for summary judgment of non-infringement and invalidity pursuant to 35 U.S.C. § 102, claiming it never sold any accused televisions or understood how its own televisions either operated or were used. (A000085-A000086 at Dkts. 148-150). The district court found the asserted claims of the '842 Patent invalid, but the claims of the '840 Patent not invalid. (A000090 at Dkt.

183). *See Oplus Techs., Ltd. v. Sears Holdings, Corp., et al.*, 2013 U.S. Dist. LEXIS 145917, *40 (C.D. Cal. Oct. 2, 2013).

The district court also found both patents not infringed because the accused products allegedly were never used by Vizio and Vizio allegedly had insufficient knowledge of the patents to induce others to infringe. (A000090 at Dkt. 183); *see Oplus*, 2013 U.S. Dist. LEXIS 145917 at *40. The district court also granted summary judgment of no contributory infringement because Oplus allegedly had "no evidence that Vizio sold any allegedly infringing product after the date of filing of the complaint." (A000048).

## A.    THE DISTRICT COURT DENIED VIZIO'S REQUEST FOR FEES

After the grant of summary judgment, Vizio moved to recover *all* its attorneys' fees under 35 U.S.C. § 285, under 28 U.S.C. § 1927, and under the district court's inherent power. (A000091-A000092 at Dkts. 190, 193, 195, and 196). On February 3, 2014, the district court *denied* Vizio's motion for attorneys' fees, finding that, although the case was exceptional under 35 U.S.C. § 285, an award of fees was not justified. (A000095 at Dkt. 220). Further, the district court refused to award attorneys' fees under 28 U.S.C. § 1927, finding that there was no evidence suggesting that the behavior of Oplus' attorneys stemmed from bad faith or an intent to harass. Vizio appealed the California district court's order to this Court on February 10, 2014. (A000095 at Dkt. 221).

In denying Vizio's request for an award of fees under 35 U.S.C. § 285, under 28 U.S.C. § 1927, and under the district court's inherent power, the California district court found:

- that "Oplus's allegations against Vizio, at the time of the filing of the compliant, were not objectively baseless" (A000033);

- that "[a]lthough Oplus knew that Vizio claimed to be unaware of the signal processing methods employed in its television, as required for indirect infringement, Oplus did not know that Vizio had discontinued all of the allegedly infringing televisions prior to the filing of its complaint. Vizio itself did not make the Court aware of this fact until at least a year into the litigation" (A000033);

- that although the district court "ultimately disagreed with Oplus's argument that Vizio could be liable for indirect infringement without knowledge of its products' signal processing methodology, … the argument had a reasonable basis in fact and law" (A000033);

- that the case was "fraught with delays and avoidance tactics to some degree on both sides" (A000034);

- that "Oplus alleged sufficient facts to support its claims, gathered limited discovery, and lost on summary judgment, as it would have even without its misconduct" (A000034);

- that "[t]here is little reason to believe that significantly more attorney fees or expert fees have been incurred than would have been in the absence of Oplus's vexatious behavior" (A000034);

- that the "Court further believes that, given the confusing state of contention filings and discovery, the first two discovery requests were substantially justified under [Rule 37]" (A000035);

- that "no single filing was clearly frivolous or employed with the purpose of harassing Vizio" (A000035);

- that "there is no evidence suggesting that Oplus's behavior stemmed from bad faith or a sufficient intent to harass" (A000035); and

- that "[g]iven that the litigation followed an expected course of motions practice, and that discovery sanctions were available to Vizio, there is no gross injustice in failing to award [] attorney fees in this case." (A000035).

(A000033-A000035). Based on these factual findings, the district court exercised its discretion in denying an award of attorneys' fees. (A000036).

After the California district court denied Vizio's request for fees, and after Vizio had appealed the California district court's order to this Court, Vizio moved to recover many of the same fees in the United States District Court for the Northern District of Illinois – even though the case against Vizio had been

transferred to California in June of 2012. (A000890). That request was also denied in a Report and Recommendation of a Magistrate Judge (A011068-A011075) and subsequent Order of the Illinois district court (A011065-A011067), finding Vizio's request "unreasonable." (A011074).

## B.    VIZIO'S REFUSAL TO PROVIDE DISCOVERY AND OPLUS' FIRST MOTION TO COMPEL

Oplus' infringement claims against Vizio were based upon publicly available information that showed that the HQV, DCDi, and MDDi technology was incorporated in the Vizio televisions and permitted practice of the methods claimed in the two Oplus patents. In its initial infringement contentions, served on August 9, 2012, Oplus identified 14 specific Vizio televisions that used the chipset technology and provided detailed claim charts with twenty six supporting exhibits pertaining to each of those chipsets. (A002009-A002076). These Vizio television models were specifically identified as practicing the claimed method: VP505XVT, VP504F, VP605F, P50HDTV10A, VM60P, GV46L0, RP56, L13, JV50P, L42HDTV10A, GV42L HDTV, L37HDTV, VW46L FHDTV10A, and P42HDTV10A. (A002010). Later in its amended infringement contentions, Oplus also identified Vizio models P50HDM, VX32L, VW32L, and VX37L. (A002738 and A002765).

Throughout the litigation, Vizio repeatedly refused to provide discovery. For example, ten days after the start of fact discovery, Oplus requested identification of

all Vizio televisions that utilized HQV, DCDi, and MDDi technology. (A009438-A009443). Vizio refused to provide this information, and instead provided a series of objections, including that it was "premature" prior to claim construction. (A009445 and A009448-A009452).

After the court's claim construction order, Oplus again requested that Vizio respond to Oplus' interrogatories and document requests. (A001903-A001906). Vizio refused all discovery, arguing that Oplus' infringement contentions were insufficient. (*E.g.*, A001833-A001834 and A001836-A001840). Oplus even served an amended set of interrogatories (Nos. 1-20) to Vizio on February 22, 2013 in an effort to clarify any alleged ambiguities. (A009469-A009478). Oplus then filed a motion to compel on March 20, 2013 (A000080 at Dkt. 114) and, a week later, a motion to extend the case schedule by four months because fact discovery closed on April 15, 2013. (A000080-A000081 at Dkt. 115).

On March 28, 2013, Vizio responded to the amended interrogatories with objections and blanket references to Fed. R. Civ. P. 33(d), still providing no documents or substantive responses. (A009480-A009497). On April 3, 2013, the district court denied Oplus' motion to compel and determined that Vizio's questions about Oplus' initial infringement contentions should be answered (A000081 at Dkt. 121 and A002108) and extended fact discovery by one month to May 15, 2013. (A000081 at Dkt. 121 and A002109).

**C.    ON APRIL 25, 2013, VIZIO FINALLY TELLS OPLUS AND THE DISTRICT COURT THAT NONE OF THE ACCUSED PRODUCTS WERE ON SALE AFTER THE FIRST AMENDED COMPLAINT WAS FILED ON DECEMBER 20, 2011**

On April 25, 2013, Vizio claimed, for the first time, that it could not be liable for indirect infringement because ***none*** of the specific Vizio products Oplus had identified in its initial infringement contentions (five of which were also identified in Oplus' First Amended Complaint, filed on December 20, 2011) "were on sale after the filing of Oplus' Complaint." (A002240-A002242 and A002251).

**D.    VIZIO WAS SELLING PRODUCTS WITH SILICON OPTIX HQV, MEDIATEK MDDI, AND/OR FAROUDJA DCDI CHIPS**

Oplus knew that Vizio was, in fact, selling products incorporating the Silicon Optix HQV, MediaTek MDDi, and/or Faroudja DCDi chips when it filed its original and amended complaints. Publicly available information suggested that Vizio had not identified at least 70 additional televisions using MDDi, DCDi, or HQV technologies, and that Vizio possessed service manuals for all 70 television sets. (A009521-A009539). Vizio admitted it had this information, yet never searched for responsive documents. (A009572 at 17-19 and A009573 at 31). Vizio's witness also described meetings with Vizio's manufacturer and the chipmakers, yet Vizio produced no documents about those meetings. (A009574 at 33, A009577, and A009590, RPD's 62, 63, 65, and 66).

Vizio's attorney invoices, ultimately produced only after Vizio prevailed on summary judgment, showed Vizio's counsel actually processed client documents, including confidential service manuals and sales data from early March 2012 and continuing through late March 2013. (A007616-A007623, A007639-A007646, A007647-A007658, A007659-A007668, and A007717-A007730).

As of November 15, 2013, Vizio's web site said it was currently selling and had "in stock" television model e502AR. (A009594-A009595). This model uses the MT5395 MediaTek chip of the MT 539x chip family, which includes the accused MDDi feature. (A009597-A009599, A009601, A009603-A009607, A009609, A009611-A009614, and A009616-A009617). In addition, Vizio's User and Service manuals showed use of the accused televisions with an interlaced signal. The VP50HDTV user manual, for example, advertises the use of DCDi Motion Adaptive De-Interlacing. (A009747). The same manual shows multiple uses of the Vizio television with interlaced signals, including 480i and 1080i signals. (A009728). The user manual for the VP505XVT1A television with HQV also showed screen detail identifying that the television was used with a 1080i interlaced signal. (A006650).

Public statements showed that Vizio *was* responsible for "developing, reviewing and testing technical designs" for the hardware ***and*** software technologies that enable its products. (A009619, see also A009627-A009628 and

11

A009634-A009635). While Vizio engineers publicly claimed to know about the algorithms and design of its products, Vizio's corporate witness said the exact opposite under oath. (A009571-A009572 at 14-16). All of this prompted the district court to observe that the "evidence suggests that Vizio knows more about its products than it claims[.]" (A000045-A000046 at n. 1).

### E. VIZIO PRODUCED NO COMMUNICATIONS WITH THE COMPANIES WHO SUPPLIED CHIPS USED IN ITS TELEVISIONS

Vizio produced no discovery of its communications with the chipmakers who supplied it with chips used in its televisions, despite these very specific document requests:

> 65. All documents sufficient to identify why Vizio chose to incorporate Faroudja DCDi, Silicon Optix HQV, or Medi[]aTek Technology in the Relevant Products.
>
> 66. All documents sufficient to describe the implementation of Faroudja DCDi, Silicon Optix HQV, or Medi[]aTek technology in the Relevant Products.

(A001882-A001883 and A011086). No responsive documents were ever produced.

### F. OPLUS HAD TO SEEK DISCOVERY DIRECTLY FROM THE CHIPMAKERS

In mid-February 2013, Oplus served third-party document and deposition subpoenas on MediaTek, Qualcomm, and STMicroelectronics. (A007712). Each made objections to the subpoenas. (See, e.g., A011090-A011153). Although on April 5, 2013 MediaTek offered to produce source code, it would not allow

testimony from any employee about the source code, rendering the offer useless. (A009761).

### G. OPLUS WAS ALSO REQUIRED TO SUBPOENA RELEVANT EVIDENCE FROM A THIRD-PARTY

In an effort to get some discovery about the relevant Vizio televisions, on May 3, 2013, Oplus served a subpoena on Technology Licensing Corporation ("TLC"), pertaining to a lawsuit entitled *IP Innovation LLC et al. v. Mitsubishi Elec. Corp. et al.*, Case No. 1:08-cv-00393 (N.D. Ill.) ("the *TLC* case"). (A002253-A002259). Niro, Haller & Niro had represented TLC in that case. Obviously, the *TLC* case was not conducted in secrecy – the public record identifies the parties and the issues – and one need not have access to any confidential documents to realize that Vizio produced documents to TLC that relate to the same products and same technology at issue in the Oplus case. TLC (like Oplus) had accused Vizio televisions using DCDi, HQV, and MDDi technologies of infringement in a lawsuit that concluded in 2011, i.e., only months before the Oplus lawsuit began. (A010030).

In the *TLC* case, Vizio also refused to provide any discovery, but the district court compelled Vizio to produce responsive information. (A010032). ("Somebody has got to go first. And you know what? It's you."). (A006227 at n. 2 and A006597). Under court order, Vizio identified "nearly 150 television sets" in response to TLC's discovery requests seeking the identity of Vizio televisions

using these *same* accused technologies. (A010039-A010041). Given the large discrepancy between the 18 Vizio models Oplus was able to identify from publicly available information and the large number of televisions containing the same accused technologies that Vizio was compelled to identify in the *TLC* case, Oplus sought identification of the accused infringing televisions through discovery Vizio provided in the *TLC* case. (A010078-A010079 and A010089).

In the *TLC* case, public records and filings identified the parties and the issues and showed that Vizio had produced documents to TLC relating to the same products and same technology at issue in the Oplus case. (A002381-A002384). The protective order in the *TLC* case did not bar use of information that was publicly available. (A002381-A002384, A002261, and A002278-A002279 at ¶¶ 23-24). Nevertheless, on May 17, 2013, Vizio filed a motion for a protective order on the TLC subpoena accusing Oplus' lawyers of violating the Protective Order. (A000082 at Dkt. 126).

## H.   OPLUS' SECOND MOTION TO COMPEL AND AMENDED INFRINGEMENT CONTENTIONS

On May 15, 2013, Oplus responded to Vizio's infringement contention questions in a 14 page single spaced letter, parsed out by each of Vizio's questions, as Oplus believed Judge Pfaelzer had directed. (A002177-A002190 and A002108). During the hearing on Vizio's motion for protection pertaining to the TLC subpoena on June 7, 2013, Oplus learned that it had misunderstood the court's

order, and that the court wanted Oplus to supplement and file its infringement contentions, rather than directly respond to each of the questions presented by Vizio. (A000331-A000332). Also on June 7, 2013, Oplus filed a motion seeking a 30 day extension to file its opening expert report, which per the court's schedule, was due on June 12, 2013. (A000084 at Dkt. 134). At this point, a year after the case was transferred, Oplus still had no substantive discovery from Vizio. Because the issue had not been resolved by the court, both parties served their opening expert reports on June 12, 2013. Oplus' opening expert report on infringement was based on publicly available information and Oplus' expert's testing of the accused models.

Oplus served and filed amended infringement contentions on June 14, 2013, again based only on publically available information. (A000084 at Dkt. 139). At that time Oplus identified four additional Vizio models. (A002738 and A002765). The district court ultimately said it was satisfied with Oplus' amended infringement contentions. (A000084-A000085 at Dkts. 144-145, A000379, A000381, and A002815).

Oplus' infringement contentions were supported by:

- an expert report on infringement by D. Michael Holmes on June 12, 2013, who also tested Vizio televisions employing the accused technologies (A002875 and A003061-A003163);

15

- numerous examples of Vizio's use of the Vizio televisions by way of reviews and product evaluations (A006478-A006525);

- testimony by a Vizio corporate witness (A009569 and A009575 at 40-41); and

- Vizio's User and Service manuals, which show use of the accused televisions with an interlaced signal. (A009687, A009728, A009747, A006611, and A006650).

Because the parties had already served their opening expert reports, the court directed Oplus to file another motion to compel if it felt Vizio had not adequately responded to its discovery requests. (A002815 and A000387-A000388). On July 3, 2013, Oplus wrote to Vizio, again setting forth where it believed Vizio's discovery responses were deficient. (A005600-A005602). Oplus filed its second motion to compel on August 16, 2013, after Vizio had already filed its second round of motions for summary judgment. (A000087 at Dkts. 156-157). Oplus sought a response to its Amended Interrogatory Nos. 1 and 7, which were served on February 22, 2013, and requested information identification of all Vizio televisions using the relevant HQV, DCDi, and MDDi technology, as well as sales data for such televisions. (A005542, A005546, and A009469-A009478). The district court denied Oplus' motion to compel on October 2, 2013. (A000038 and A000061).

# I.    OPLUS' INVALIDITY EXPERTS DID NOT CONTRADICT EACH OTHER

In response to Vizio's initial, unsuccessful, motion for summary judgment under 35 U.S.C. §§ 101 and 112, Oplus submitted expert testimony in the form of a Declaration from Richard Ferraro. (A001651-A001671). Vizio's expert, Dr. Hemami, had concluded that "An absolute value of a linear combination is not a linear combination." (A001460-A001461 at ¶ 24). Subsection II.F of Dr. Ferraro's Declaration was titled "An absolute value of a linear combination is a linear combination," refuting Dr. Hemami's conclusion. (A001663). Dr. Ferraro said: "I disagree with Dr. Hemami's conclusion [Hemami Dec., ¶ 24] that '[a]n absolute value of a linear combination is not a linear combination.'" (A001663).

In response to Oplus' second motion for summary judgment on invalidity under 35 U.S.C. § 102, Oplus used a different technical expert, J. Carl Cooper, because he was the named inventor of U.S. Patent No. 6,529,637, one of the references that Vizio claimed invalidated the '842 Patent. (A004273 and A004282-A004286).

Dr. Ferraro's statements that "an absolute value of a linear combination is a linear combination" were not contradicted by Mr. Cooper's later testimony, that "the absolute value of the difference between spatial pixels" (A004465 at ¶ 52) was not a member of the Markush group. Mr. Cooper did not address whether "an absolute value of a linear combination is a linear combination." Rather, in

17

discussing the Simonetti reference, Mr. Cooper testified that "the absolute value of the difference between two spatial pixels" is not a member of the Markush groups of claims 7 and 14 of the '842 Patent. (A004465-A004466 at ¶ 52 and A009931-A009934).

## V.    SUMMARY OF THE ARGUMENT

Vizio claims the district court was correct to find this case exceptional, but wrong not to award fees. But, the district court, having presided over the case and having observed what was going on first-hand, was in the best position to determine whether or not an award of fees was justified. It found that "Oplus's allegations against Vizio, at the time of the filing of the complaint [and amended complaint], were not objectively baseless" and had a "reasonable basis in fact and law." (A000033). The district court also found that "Oplus alleged sufficient facts to support its claims, gathered limited discovery, and lost on summary judgment, as it would have even without its misconduct." (A000034). Contrary to Vizio's arguments, there was no finding in the district court's order that Oplus failed to conduct a pre-filing investigation. In fact, the district court found Oplus' infringement contentions adequate. (A002815).

Vizio asks this Court to apply a rigid non-discretionary standard – if a case is found exceptional, then attorneys' fees must be awarded. But, the law remains unchanged after the *Octane Fitness* and *Highmark* cases. A party seeking an award

of fees under 35 U.S.C. § 285 must prove that it is entitled to an award of fees as part of a separate, independent discretionary determination by the district court.

In exercising its discretion in this case, the district court concluded that the case was "fraught with delays and avoidance tactics to some degree on both sides" (A000034), even though Vizio now argues that Oplus alone protracted the litigation. Vizio inexplicably waited a year and a half after Oplus filed its amended complaint to inform Oplus and the district court that it had not sold any of the products Oplus accused of infringement after the filing of the complaint. (A002240-A002242 and A002251). Vizio had no explanation why it didn't reveal this case-dispositive fact immediately or why, instead, it filed a motion to transfer the case followed by three unrelated motions for summary judgment when the case could have been quickly resolved on a single motion for summary judgment of non-infringement. The district court also observed that Vizio "knows more about its products than it claims[.]" (A000045-A000046 at n. 1).

The district court made no legal error. It simply considered the evidence and then exercised its discretion in denying an award of fees, just as it did in finding the case exceptional and the conduct of Oplus vexatious.

## VI.    STATEMENT OF STANDARD OF REVIEW

The Supreme Court held in *Highmark, Inc. v. Allcare Health Management System, Inc.*, 134 S.Ct. 1744 (2014), that a district court is in the best position to

decide whether or not fees should be awarded, hence, its determination is subject to

review under the abuse of discretion standard:

> Because §285 commits the determination whether a case is "exceptional" to the discretion of the district court, that decision is to be reviewed on appeal for abuse of discretion.
>
> * * * *
>
> As in *Pierce*, "as a matter of the sound administration of justice," the district court "is better positioned" to decide whether a case is exceptional because it lives with the case over a pro-longed period of time.
>
> * * * *
>
> We therefore hold that an appellate court should apply an abuse-of-discretion standard in reviewing **all aspects** of a district court's §285 determination.

*Highmark*, at 1748-1749 (citing *Pierce v. Underwood*, 487 U.S. 552 (1988))

(emphasis added).

Similarly, the standard of review for the denial of sanctions under 28 U.S.C.

§ 1927 and a court's inherent power is also an abuse of discretion. *MEMC Elec.*

*Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1382 (Fed.

Cir. 2005); *Trulis v. Barton*, 107 F.3d 685, 692, 695 (9th Cir. 1995).

A district court abuses it discretion when its decision is based on either "an

erroneous view of the law" or "a clearly erroneous assessment of the evidence."

*Highmark*, 134 S.Ct. at 1748, n. 2.

# VII.  ARGUMENT

## A.  THE DISTRICT COURT MADE NO LEGAL ERROR; IT SIMPLY MADE A DISCRETIONARY FINDING BASED UPON ALL THE EVIDENCE

Vizio claims the district court committed legal error. But, the district court followed the law as Vizio argued it, applying the higher pre-*Octane Fitness* standard to determine if the case was exceptional. *Octane Fitness* did not change the second part of the two-part analysis, namely, whether an award of fees is justified after the case is found exceptional.

In this case, Vizio's fees were largely self-imposed, since it failed to promptly move for summary judgment on the ground that it had made no infringing sales after the Amended Complaint was filed in December 2011. As Federal Circuit Judge Dyk (sitting by designation) recently noted in *Stragent, LLC v. Intel Corp.*, Case No. 6:11-cv-00421 (E.D. Tex. Aug. 6, 2014) (A011154-A011164), an award of attorneys' fees is not appropriate where the party seeking fees failed to timely file a motion for summary judgment to establish that the case was, indeed, frivolous:

> There is little injustice in forcing Intel to bear its own attorney's fees for defending a claim it did not challenge on summary judgment. Disposing of a frivolous claim on summary judgment would avoid a trial and have the effect of saving both parties a substantial portion of their litigation costs.

(A011163).

21

Here, the district court found (in the exercise of its discretion) that an award of fees was not justified after finding the case exceptional. This was the correct two-part approach to the issue. *See Diego, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1366-67 (Fed. Cir. 2007) (after finding a case "exceptional" under 35 U.S.C. § 285, a subsequent decision to award fees under 35 U.S.C. § 285 is a wholly separate and independent step). Contrary to Vizio's argument, the fact that a case is found exceptional does not automatically require an award of fees.

Substantial evidence supports the district court's decision. First, regarding Oplus' indirect infringement claims, Vizio inexplicably did not tell Oplus or the district court ***until a year and a half after the case was filed*** that none of the products Oplus had accused of infringement were even being sold after the filing of the complaint. (A002240-A002242 and A002251). The timeline shows these relevant facts:

- On December 20, 2011, Oplus filed its First Amended Complaint and identified five Vizio television models (A000539-A000541);

- On August 9, 2012, Oplus served its initial infringement contentions, and identified 14 Vizio television models (A002009-A002076);

- On August 17, 2012, Oplus' First Set of Interrogatories sought identification of Vizio televisions using the accused HQV, DCDi, and MDDi technology (A009438-A009443);

22

- On April 25, 2013, Vizio served an interrogatory response that stated "As to the specifically identified television products identified in Oplus' August 9, 2012 Infringement Contentions, VIZIO has conducted a reasonable search and determined that none of them were on sale after the filing of Oplus' Complaint." (A002240-A002242 and A002251); and

- On June 14, 2013, Oplus served its amended infringement contentions and identified four additional Vizio television models. (A002735-A002810).

Vizio also held back its later, successful invalidity argument on anticipation, and, instead, chose to seek summary judgment based on 35 U.S.C. §§ 101 and 112 early, which it lost. As argued by Oplus below, Vizio incurred fees that were totally unnecessary:

> Number one, Your Honor granted summary judgment of anticipation as to one of the patents based upon the Simonetti (ph) prior, which they knew about and applied and told us about one year before they filed a motion for summary judgment. If that was invalidating prior art -- and I like to believe defense counsel hopefully behaves the way we do, and that is if they have a position, tell us about it, and if it's meritorious that case will come to an end, if I'm involved. They didn't do that. They waited one year, spent a million dollars, and then they filed a motion for summary judgment. ***They say there was no infringement because they didn't sell anything, but if they didn't sell anything, they knew they didn't sell anything the day this complaint was filed. We didn't have to go through a year of discovery. We didn't have to go through a judicial panel of multi-district litigation***….

(A000490 and A000509, emphasis added).

23

The district court observed that neither party pursued discovery sanctions and that "[o]ther than the three discovery motions, each instance of motion practice occurred according to normal litigation practice. There is little reason to believe that significantly more attorney fees or expert fees have been incurred than would have been in the absence of Oplus's vexatious behavior." (A000034). Moreover, the district court held that Oplus' discovery motions were "substantially justified." (A000035). In the end, these rhetorical questions were never answered by Vizio below: 1) If Oplus' behavior was indeed so egregious, why did Vizio wait until the end of the case to seek sanctions against Oplus?; and 2) If Oplus' infringement position was so unreasonable, why didn't Vizio seek Rule 11 sanctions against Oplus immediately?

The district court found that "Oplus's allegations against Vizio, at the time of the filing of the compliant, were not objectively baseless" (A000033), and that "Oplus did not know that Vizio had discontinued all of the allegedly infringing televisions prior to the filing of its complaint. Vizio itself did not make the Court aware of this fact until at least a year into the litigation." (A000033). The district court found that "no single filing was clearly frivolous or employed with the purpose of harassing Vizio" (A000035) and that "there is no evidence suggesting that Oplus's behavior stemmed from bad faith or a sufficient intent to harass." (A000035). These factual findings fully support the district court's discretionary

holding that an award of attorneys' fees was not warranted particularly because there was no erroneous application of the law or assessment of the evidence.

## B. THE LEGAL STANDARD IS NOT "SHALL" AWARD, IT IS "MAY" AWARD

In *Octane Fitness* and *Highmark*, the Supreme Court held that a district court *may* award fees. Yet, Vizio argues for an inflexible standard requiring an award of fees anytime a case is found exceptional. (Br. at 33). That is not the law. Indeed, the same discretionary standard applies under 28 U.S.C. § 1927. A district court *may* award fees if it finds that a lawyer multiplied proceedings or acted vexatiously. Like 35 U.S.C. § 285, however, an award of fees is not mandatory.

A finding that a case is exceptional "does not require in all circumstances the award of attorney fees." *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986); *see also L.A.Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1128 (Fed. Cir. 1993); *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1215 (Fed. Cir. 1987) ("After the district determines that a case is exceptional, there remains in every case its freedom to exercise its discretion 'informed by the court's familiarity with the matter in litigation and the interest of justice.'"). Nothing in the Supreme Court's *Highmark* or *Octane* decisions suggests that the long-standing discretion of a district court to decline fee awards even in exceptional cases was rejected along with the *Brooks Furniture* exceptional-case test. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,

134 S. Ct. 1749 (2014) (citing *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.,* 393 F.3d 1378 (Fed. Cir. 2005). To the contrary, the Supreme Court indicated that district courts should have discretion in "all aspects of [the] § 285 determination." *See Highmark*, 134 S.Ct. at 1749. Thus, the district court's views about whether a fee award is warranted are controlling, regardless of the exceptional-case determination. *See Consolidated Aluminum Corp. v. Foseco Int'l. Ltd.*, 910 F.2d 804, 814-15 (Fed. Cir. 1990).

Further, as this Court recently held in *Homeland Housewares v. Sorensen Research*, the discretionary standard still applies to the amount, if any, of a fee award:

> We have long afforded district courts "considerable discretion" in determining the amount of reasonable attorney fees under § 285, as we respect "the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Bywaters v. United States*, 670 F.3d 1221, 1228 (Fed. Cir. 2012) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (19830)).

*Homeland*, 2013-1537, 2014 U.S. App. LEXIS 17300, at *8 (Fed. Cir. Sept. 8, 2014).

If an award of fees after a finding that a case is exceptional or conduct vexatious was automatic, there would be no need for a district court to weigh the conduct of both sides to a lawsuit and then exercise its discretion in deciding whether or not a fee award is appropriate. Vizio makes much of the district court's

statement (made at oral argument) that it prefers not to award fees (Br. at 33-35). But, the district court also made clear that it had an open mind on the subject ("I haven't made up my mind yet" (A000490 and A000505)) and that it would consider all the evidence, including Vizio's conduct in delaying for a year before making its argument that it never sold any accused products:

> Although Oplus knew that Vizio claimed to be unaware of the signal processing methods employed in its television, as required for indirect infringement, Oplus did not know that Vizio had discontinued all of the allegedly infringing televisions prior to the filing of its complaint. Vizio itself did not make the Court aware of this fact until at least a year into the litigation.

(A000033).

Vizio held back key arguments and evidence the district court later found dispositive. It should have moved for summary judgment immediately or, alternatively, have simply told Oplus and the district court it had made no sales of products with the accused technologies. That would have put an end to the case before significant fees were incurred by either side.

## C.   THE DISTRICT COURT DID NOT HAVE ANY PERSONAL MANDATE AGAINST AWARDING FEES

The centerpiece of Vizio's appeal is the erroneous claim that the district court had "an unreasonable and arbitrary personal mandate *never* to award fees, no matter the gravity of the misconduct or circumstances" (Br. at 22, emphasis in original; see also, Br. at 25) and that it was "[d]riven by its personal and arbitrary

27

mandate ***never*** to award fees" (Br. at 25, emphasis in original) and was "married to

an arbitrary and personal mandate ***never*** to award fees, stuck by its vows..." (Br. at

33, emphasis added). These personal attacks on the district court are unjustified.

First, the district court made clear that it had an open mind on the issue and would

view all the evidence before deciding whether or not to award fees ("I haven't

made up my mind yet" (A000490 and A0000505)). Second, the district court, in

fact, has awarded fees under 35 U.S.C. § 285 in other cases:

> Having found that this is an exceptional case, plaintiff, as the
> prevailing party, is entitled to an award of reasonable attorney's fees.

*Korody-Colyer Corp. v. General Motors Corp.*, 1984 WL 63132, at *35 (C.D. Cal.

1984) (Pfaelzer J.);

> The Court finds that this case is exceptional within the meaning of
> Section 285 and awards Alaris a portion of its requested attorney fees
> on that basis. The Court finds that sanctions are also warranted under
> Rule 11 for ICU's assertion of the "spike" claims in its amended
> complaint, but finds that such sanctions are subsumed by the Court's
> award of attorney fees under Section 285.

*ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, 2007 WL 6137003, at *1 (C.D.

Cal. 2007) (Pfaelzer J.);

> "The determination of the amount of the award remains within the
> discretion of the trial court, since it is the trial judge who is in the best
> position to know how severely [the offending party's] misconduct has
> affected the litigation."

*Id.* at *2 (quoting *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547,

1553 (Fed. Cir. 1990)); and

> The Court believes that Rule 11 sanctions are warranted for ICU's filing of the amended complaint, as its assertion of the "spike" claims was objectively baseless and could not have been the product of a competent and reasonable inquiry.

*Id.* at *11.

Beyond its actual award of attorneys' fees in appropriate cases, the district court has considerable experience in patent cases – authoring more than 100 reported decisions. There is absolutely nothing to prove that the district court had any predisposition either way on the issue of fees awards.

### D. THE DISTRICT COURT CORRECTLY DECLINED TO AWARD FEES UNDER 28 U.S.C. § 1927

After transfer, Oplus' counsel did nothing to delay the resolution of this case or multiply the proceedings. The underlying case proceeded rapidly, with a final judgment being entered within sixteen months after transfer. There were no frivolous motions, no harassment of Vizio and no unreasonable discovery requests; Vizio did not explain below how any conduct by Oplus' counsel multiplied the proceedings.

A denial of a motion for sanctions under 28 U.S.C. § 1927 is reviewed under the law of the regional circuit. *Nystrom v. Trex Co.*, 424 F.3d 1136, 1141 (Fed. Cir. 2005). Sanctions are permitted only for the "multiplication of proceedings," and to address "unnecessary filings and tactics once a lawsuit has begun." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996).

Further, 28 U.S.C. § 1927 sanctions "must be supported by a finding of subjective bad faith," *In re Keegan Mgmt.*, 78 F.3d at 436 (quoting *New Alaska Development Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989)) which is only "present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (citing *Estate of Blas v. Winkler*, 792 F.2d 858, 860 (9th Cir. 1986)). Even "reckless nonfrivolous filings, without more, may not be sanctioned." *Id.*

Here, the district court correctly found that none of Oplus' filings were frivolous or used to harass Vizio. (A000035). On the contrary, the district court found that Oplus' two discovery motions were substantially justified (A000034-A000035), and noted that Vizio did not seek any sanctions under Rule 37 relating to either motion. (A000034). The mere filing of a complaint cannot serve as a basis for an award of fees under 28 U.S.C. § 1927 in the Ninth Circuit, *see In re Keegan*, 78 F.3d at 435; here, the district court found that Oplus' infringement allegations against Vizio were reasonable. (A000033).

Vizio's first summary judgment motion alleging that the '840 and '842 Patents were invalid under 35 U.S.C. §§ 101 and 112 and Vizio's second summary judgment motion for invalidity of the '840 Patent were denied. (A001778 and A000061). In finding the '842 Patent invalid as anticipated and the Oplus patents

not infringed, there was nothing to suggest that Oplus' arguments in opposition were frivolous. (A000038-A000061).

Finally, although the district court found that Oplus engaged in abusive discovery tactics, these allegedly abusive "tactics" did not multiply the proceedings in any way. That Oplus allegedly had not initially presented adequate infringement contentions actually benefited Vizio by giving it an excuse not to respond to any of Oplus' discovery requests. And Oplus' subpoena to TLC was issued only to get evidence of infringement, not to harass Vizio. The subpoena was not even directed to Vizio and, while Vizio moved for a protective order, it did not seek any fees under Fed. R. Civ. P. 26(c)(3) or 37(a)(5). (A000034). Similarly, Oplus' alleged failure to seek third-party discovery from MediaTek did not burden or harass Vizio in any way.

The cases cited by Vizio to support is argument that the district court's factual findings automatically require the imposition of sanctions against Oplus' counsel are distinguishable. In *Trulis v. Barton*, there was proof of "subjective bad faith" by plaintiff's counsel in refusing to obey the unequivocal demands of five of his named plaintiff-clients to dismiss them from the pending litigation. 107 F.3d 685, 693-94 (9th Cir. 1995). The Ninth Circuit recognized "an attorney cannot continue to represent a client in a lawsuit in contravention of that client's express instruction to the contrary." *Id.* at 693. Obviously, an attorney's "intentional

disregard of his client's express instructions and his continued insistence that he represented persons who he was not authorized to represent was reckless" and "increased the scope of [the] litigation in violation of § 1927." *Id.* at 694. Here, Oplus' counsel did nothing to press forward with Oplus' claims in contravention of Oplus' express wishes. Rather, as recognized by the district court, the underlying litigation followed a normal course, in which Oplus "alleged sufficient facts to support its claims, gathered limited discovery, and lost on summary judgment.…" (A000034).

In *Micromash Tech. Corp. v. Am. Recreation Prods., Inc.*, the district court found (unlike this case) that the plaintiff had failed to conduct a pre-filing investigation and used "dilatory and evasive" discovery tactics. *Micromash Tech. Corp. v. Am. Recreation Prods., Inc.*, 2007 WL 2501783 at *7 (N.D. Cal. Aug. 30, 2007). The district court in this case found that Oplus' counsel asserted claims that had a "reasonable basis in fact and law." (A000033). There was no suggestion (much less a finding) that Oplus' counsel was ever evasive in responding to Vizio's discovery requests.

Finally, *Fink v. Gomez* involved an attorney who deliberately misled the court into orchestrating a disciplinary hearing against an inmate. 239 F.3d 989, 990-991 (9th Cir. 2001). In finding that sanctions were appropriate under the court's inherent power, the Ninth Circuit held that: "an attorney's reckless

misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power." *Id.* at 994. Here, no reckless misstatements of law and fact, coupled with an improper purpose, have been suggested by either the district court or Vizio.

Vizio states that the district court had an erroneous view of the law when it found that "no ***single filing*** [by Oplus] was clearly frivolous or employed with the purpose of harassing Vizio." (Br. at 58; A000035, emphasis added). But, Vizio ignores the very next sentence in the district court's opinion that: "Although the court has ample evidence of Oplus's litigation misconduct, ***there is no evidence suggesting that Oplus's behavior stemmed from bad faith or a sufficient intent to harass.***" (A000035, emphasis added). The district court did not just deny fees under 28 U.S.C. § 1927 because "no single filing" was frivolous, it denied fees because there was no evidence to support a conclusion that Oplus' counsel acted in bad faith. Hence, this case is distinguishable from *Lahiri v. Universal Music & Video Distr. Corp.*, cited by Vizio at pages 59-60 of its brief, where sanctions were upheld because the plaintiff's counsel "acted recklessly and in bad faith and his conduct caused unreasonably protracted and costly litigation over a frivolous … claim." 606 F.3d 1216, 1222 (9th Cir. 2010).

In this case, the district court did not find that Oplus' counsel acted in bad faith and there is no evidence suggesting this factual finding should be overturned.

### E.    AN AWARD OF FEES AGAINST THE ENTIRE NIRO LAW FIRM WAS ALSO UNWARRANTED BECAUSE THE DISTRICT COURT FOUND MISCONDUCT ONLY BY A SINGLE ATTORNEY

Vizio sought to impose sanctions on the entire law firm, even though only a few of the firm's lawyers were involved in the case and only one lawyer was found to have acted inappropriately. (A000500). At the hearing, the district court focused on the behavior of a young associate lawyer (who is no longer employed by the Niro firm), finding him "aggressive, uncooperative and [acting] outside the boundaries of professional behavior." (A000035-A000036). 28 U.S.C. § 1927 focuses on the conduct of individual lawyers, not on law firms. *Claiborne v. Wisdom*, 414 F.3d 715, 723-24 (7th. Cir. 2005) ("§ 1927 does not provide a legal basis for an order of fees against an entity like a law firm that is not itself 'admitted to practice' before the tribunal."); *see also Montgomery v. Etreppid Techs., LLC*, 2010 U.S. Dist. LEXIS 43304, at *44-46 (D. Nev. 2010).

Here, the district court found only one lawyer's conduct aggressive and arrogant:

> THE COURT: … [T]hough I tried with him to be as courteous as I could, [he] didn't, in this court, behave in a fashion that I approve of. I want to tell you that he was extremely arrogant.

Now, whether he was vexatious or not is another problem altogether, but he certainly gets a high award from me for being arrogant and aggressive. I don't think you would have approved of it.

\* \* \* \*

THE COURT: I said he was arrogant.

\* \* \* \*

THE COURT: And that's an observation that I don't make very often either.

I want you to know that -- that I'm trying hard in this situation not to use the fact of his aggressiveness against your law firm, but I do tell you, if I were disposed to criticize lawyers, I'd criticize him.

Now, he may have thought -- I reflected on this a few times.

He may have thought that he was in just a court on the West Coast that didn't know anything.

MR. NIRO: That would be a big mistake.

THE COURT: He certainly acted that way.

(A000501-A000503). The district court said it could not understand what motivated the bad behavior:

Now, I've stated that not because I came out here disposed to grant attorneys' fees. I've said that to you because you are -- you have a reputation, which is not a bad reputation, and I reflected when he was here on just what -- what could have motivated his behavior.

(A000503). Nothing, of course, excuses the associate lawyer's behavior. But, the personal family crisis that lawyer had at the time of his last appearance before the

district court was addressed in a post-hearing declaration filed with the district court and at least explains the context of his behavior. (A010601-A010603).

In the end, the district court agreed it would be improper to sanction an entire law firm because of the conduct of one lawyer: ("… I don't want to hold against your firm what I regarded as arrogant behavior on the part of the lawyer who appeared before me. That's what I said."). (A000518).

Vizio's attack on the entire Niro law firm, however, was both personal and unwarranted, calling the firm a "troll" and the "architect" behind the alleged misconduct:

> … They say unequivocally -- I want to read it to the court because it -- it says: The law firm of Niro, H[a]ller & Niro, not Gabe Opa[t]ken, the firm, is the true troll behind the baseless case and the architect of the litigation misconduct described therein.
>
> They call us a troll. They say we're the architect. We're the mastermind. We're the bad guys. The law firm, not a particular lawyer.
>
> And when you read their brief -- briefs -- 266 times -- my eyes were getting blurry looking at -- "Oplus counsel," "Oplus counsel," "Oplus counsel." More than five times per page that they attack our law firm. Not Oplus, the client, under 285 or inherent powers but our law firm. And not a particular individual but the firm, all of its lawyers, everyone.

(A000511-A000512; see also A007568).

In the end, the district court was in the best position to observe the conduct of all the lawyers in the case and to use its discretion in determining whether a fee

award was justified against any individual lawyers. For a myriad of reasons, the district court correctly found that the imposition of fees against either Oplus or any of the lawyers who appeared in the case was simply not justified. That discretionary finding should not be reversed.

## F.    THE DISTRICT COURT ALSO CORRECTLY DECLINED TO AWARD FEES UNDER ITS INHERENT POWER

Under its inherent power, the district court could sanction an attorney or party for misconduct by "assess[ing] attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quoting *Alyska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 258-59 (1975)). "Use of this inherent authority is reserved for cases where the district court makes a 'finding of fraud or bad faith whereby the 'very temple of justice has been defiled.''" *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012) (quoting *Chambers*, 501 U.S. at 46). When conduct can adequately be sanctioned under statutory authority, a court should rely on the statutory authority rather than its inherent power. *Chambers* at 50.

Vizio has argued that all of the Oplus conduct falls within the scope of 35 U.S.C. § 285 and 28 U.S.C. § 1927 and identified no separate conduct that requires use of the district court's inherent powers. Because the district court found the imposition of sanctions was inappropriate under 35 U.S.C. § 285 and 28 U.S.C. §

1927, there was no need for the district court to rehash those issues in considering sanctions under its inherent power. *Trulis*, cited by Vizio, is distinguishable. In that case, the district court was faced with a motion for sanctions regarding conduct that only fell under its inherent power, and provided no explanation for its decision not to award fees. 107 F.3d at 695-96. In this case, the district court provided a detailed discussion of all the relevant conduct in the context of 35 U.S.C. § 285 and 28 U.S.C. § 1927, making further detailed analysis under the district court's inherent power unnecessary.

### G. VIZIO HAS REPEATEDLY SOUGHT FEES AGAINST OPLUS AND ITS LAWYERS BY SELECTIVELY RELYING ONLY ON THOSE FACTS IT CONSIDERS FAVORABLE WHILE IGNORING THOSE THAT ARE NOT

Vizio claims the district court was wrong not to award fees in California, but right to find the case vexatious and exceptional. Here, the district court concluded a fee award was not appropriate based upon a full consideration of all the evidence.

The California district court's decision is also supported by the decision of the Illinois district court on Vizio's parallel request for a fee award in the United States District Court for the Northern District of Illinois in the *Oplus v. Sears* case referenced in Vizio's brief. (Br. at 7). After Vizio was denied fees in the United States District Court for the Central District of California, it sought many of the same fees in the United States District Court for the Northern District of Illinois.

38

But, in denying Vizio's duplicative, second request for fees, the Illinois district court held that Vizio's request was "unreasonable":

> In support of its motion, Vizio submitted an amended declaration from Adrian M. Pruetz, an attorney of record for both Sears and Vizio, who states that the fees Vizio seeks are reasonable. According to Mr. Pruetz's declaration, Vizio is seeking to recover from Oplus more than $200,000 in fees and expenses, $53,000 of which was incurred while this case was stayed. Literally nothing happened in this case during this period of time; no work was performed on behalf of Sears. Given the posture of the case during this time period, Vizio's request, at least for these months, is patently unreasonable. Beyond that, common sense dictates that $200,000 in fees and expenses is decidedly unreasonable in case where so little actually transpired. At the end of the day, Vizio's motion suggests that what Vizio is seeking is not fees and expenses incurred on behalf of Sears in this case, but fees and expenses incurred on its own behalf in the California case. Judge Pfaelzer already denied that request, and we recommend doing so as well.

(A011074-A011075). The Illinois district court adopted the recommendation of the Magistrate Judge, finding the case was not exceptional:

> In sum, Judge Mason correctly concluded that, to the extent that Vizio is seeking fees incurred while representing itself, Judge Pfaelzer already ruled on (and denied) that request. Judge Mason also independently considered Oplus's conduct relating to Sears and reasonably found that it did not warrant an award of fees. This Court, too, finds that the conduct that occurred several years ago in this district was not exceptional such that the imposition of fees is warranted. Therefore, the Court adopts Judge Mason's Report and Recommendation of July 28, 2014, and denies Defendant Vizio, Inc's motion for attorneys' fees and expenses pursuant to 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's inherent power [53].

(A11065 and A011067). In short, both the California and Illinois district courts denied Vizio's requests for fees and, in each instance, properly exercised their discretion in doing so.

### H. THE DISTRICT COURT FOUND THAT OPLUS' CLAIMS HAD A REASONABLE BASIS IN FACT AND LAW

Vizio assertion that the district court found that "Oplus conducted no pre-filing investigation" (Br. at 35), is based upon a comment made by the district court prior to taking Vizio's fees motion under advisement. (A000490 and A000522). No such conclusion is in the court's order. After full consideration, the district court found that Oplus' claims against Vizio "were not objectively baseless" and "had a reasonable basis in fact and law." (A000033). Oplus' counsel conducted a detailed pre-filing investigation, and prepared claim charts to be certain that there was a good-faith basis for infringement. (A000508). Some of the claim charts were even attached to Oplus' Amended Complaint and relied upon technical articles from the creators the HQV technology showing how the video processing algorithm in that technology works. (A000576-A000582 and A000584-A000591). Without any discovery from Vizio, Oplus still answered specific questions about its due diligence and supplemented its infringement contentions as it found more technical information on the Vizio televisions. (A000084 at Dkt. 139). The district court was ultimately satisfied with Oplus' infringement

contentions. (A000084-A000085 at Dkts. 144-145, A000379, A000381, and A002815), which further supports its conclusion that Oplus' claims had a "reasonable basis in fact and law." (A000033).

### 1. Oplus' Direct Infringement Claims Were Supported Below

Vizio argues Oplus had no basis for direct infringement because: 1) it could not show how "the chipsets in the accused televisions were capable of practicing the claimed methods" (Br. at 39); 2) it did not serve discovery on third-party chip manufacturers to learn the details of algorithms used in the accused devices (Br. at 36-37); and 3) it did not prove beyond any doubt that other algorithms could not be used in the accused devices (Br. at 37-38).

The district court found that Oplus had shown that the accused products were being tested and used, finding only that the evidence failed to prove "whether Vizio *itself* performed … the accused method with an interlaced signal." (A000046-A000047, emphasis added). Oplus relied on Vizio User and Service manuals taken from the Vizio website, which showed multiple uses of the accused televisions with an interlaced signal. (A009728, A009747, and A006650; see also A006229-A006234). This, alone, provided a "reasonable basis in fact and law" to pursue a claim for direct infringement. (A000033).

Second, Oplus did seek third-party discovery from Vizio's chip suppliers, such as MediaTek. But, MediaTek's offer to produce evidence was crippled with

conditions that made it impossible to authenticate any source code materials or to provide admissible evidence to support Oplus' claims. (A009761).

Oplus did not ignore the availability of alternative algorithms. Rather, it went forward on the available evidence about how the chipsets worked in the accused products, using published literature describing how the relevant video processing algorithms (e.g. HQV) operated (A002022) and then actually testing Vizio televisions employing the accused technologies. This testing confirmed that Vizio's televisions met the patent claim limitations. (A009657-A009679). Oplus did not have to disprove the use of other video processing algorithms where, as here, there was no contrary evidence that any such alternatives were ever used.

### 2.    Oplus' Indirect Infringement Claims Were Also Supported In Fact And Law

Vizio argues that Oplus "knew before filing suit that VIZIO did not and could not indirectly infringe the Oplus patents[.]" (Br. at 39). But, this ignores the very language of Oplus' Amended Complaint, which states that "Vizio is indirectly infringing the '842 Patent because it now knows, *and has known since the filing of the original Complaint*, that the steps of the claimed method described in claim 14, for example, are performed by users of Vizio products[.]" (A000539, emphasis added). This alone provides actual notice of infringement as a matter of law. 35 U.S.C. § 287.

The record fully supports the conclusion that Vizio alone is responsible for "developing, reviewing and testing technical designs" for its products. (A009619). Mark Apitz, Vizio's Vice President of Engineering, admitted "My team is responsible for putting in place the hardware and software technologies that enable our product roadmap. ***That means developing, reviewing and testing technical designs with teams located in the U.S. and in lots of other locations overseas***." (A009619, emphasis added). It was reasonable for Oplus to conclude that Vizio, in fact, had actual knowledge of the video processing hardware and software used in the accused products. (A006750-A006752).

Vizio infers now that Oplus violated its Rule 11 duty by maintaining "a case wholly lacking in evidentiary support" (Br. at 42 at n. 2). But, Vizio never served a Rule 11 motion during the pendency of the case. For good reason – as of 2013, Vizio's web site admitted it was currently selling a television model e502AR (A009594-A009595), which uses the MT5395 MediaTek chip of the MT 539x chip family and includes the accused MDDi feature (A009597-A009599, A009601, A009603-A009607, A009609, A009611-A009614, and A009616-A009617). This further supports the conclusion that Oplus brought and maintained claims having a reasonable basis in fact and law, just as the district court found. (A000033).

I.    **OPLUS' INFRINGEMENT AND VALIDITY POSITIONS WERE NEITHER INCONSISTENT NOR FRIVOLOUS**

There were no inconsistencies between the opinions of Oplus' technical experts and nothing that establishes Oplus' infringement and validity positions were frivolous.

  1.    **Oplus Did Not Take Contradictory Positions Regarding The "Absolute Value Of The Difference Between Two Spatial Pixel Values"**

Vizio argues that Oplus relied on Col. 5:46-49 from the '186 Patent in support of its claim that Vizio televisions with MediaTek MDDi technology satisfied the "evaluating logical operations of linear combinations of values" limitation of the '842 Patent. (Br. at 44). But, Oplus *did not* cite – or rely upon – that excerpt from the '186 Patent in support of its claim for infringement. (A008177-A008197, A002788-A002810). Rather, Oplus cited only to ***Col. 1:48-56*** of the '186 Patent as support for how Vizio's products satisfied the "evaluating logical operations of linear combinations of values" limitation. (A008184, A008194-A008195, A002806-A002808, and A002795-A002797). This showed that the MediaTek chips used by Vizio performed motion adaptive de-interlacing involving an "interpolation algorithm." (A008073-A008074). As for the nature of this "interpolation algorithm," Oplus cited to other evidence, such as Col. 4:45-64 of the '329 Patent as evidence regarding the interpolation performed within the

MediaTek chips. (A008073-A008074, A008185, A008195-A008196, A002795-A002797, and A002808-A002809). Vizio ignores this other evidence. Oplus' citation to the '186 Patent had **nothing** to do with "the absolute value of spatial pixel differences."

There was no contradiction when Oplus' expert, Mr. Cooper, correctly stated that this excerpt did not satisfy the "evaluating logical operations of linear combinations of values" limitation. Col. 5:46-49 of the '186 Patent does not disclose "the absolute value of the difference between two **spatial** pixel values," as Vizio claims (Br. at 44, emphasis added). Rather, as recognized by Vizio's own expert, it actually discloses "*temporal pixel differences*." (A003722 at ¶ 85, bold added, italics in original). In short, Vizio's claim that Mr. Cooper contradicted Oplus' infringement position has no merit.

### 2. Oplus' Technical Experts Did Not Take Conflicting Positions Regarding The Absolute Value Operator

Vizio contends Dr. Ferraro's testimony that "absolute value of a linear combination is a linear combination" was later contradicted by a second expert who testified "the absolute value of the difference between spatial pixels was not a member of the Markush group." There is no contradiction in the two statements because they address completely different subjects. (A008075-A008077). In opining that "the absolute value of the difference between spatial pixels"

(A004465-A004466) was not a member of the Markush group, Mr. Cooper was not testifying about whether "an absolute value of a linear combination is a linear combination." Rather, he was pointing out that "the absolute value of the difference between spatial pixels" is not one of the values listed within the Markush groups of claims 7 and 14 of the '842 Patent. (A004465-A004466). At his deposition, Mr. Cooper explained why there was no discrepancy. (A009931-A009934).

Vizio is incorrect in its argument that "Oplus switched experts so it could assert a directly contradictory position with respect to invalidity by anticipation under 35 U.S.C. § 102." (Br. at 47). Mr. Cooper is the named inventor of U.S. Patent No. 6,529,637, one of the prior art references that Vizio asserted against the '842 Patent. (A004273 and A004282-A004286). He was the logical expert to testify on what his own patent meant.

### 3.    Oplus' Expert Did Not Contradict Oplus' Infringement Theories

Vizio grossly oversimplifies Oplus' infringement position. Oplus' infringement contentions included 26 Exhibits and did far more than cite generically to "motion adaptive de-interlacing" or "3:2 pulldown." (A002009-A002076 and A002735-A002810). Oplus showed that HQV technology analyzes pixels from temporally related fields in assigning values to missing pixels. (See, e.g., A002022 and A002778-A002780). Likewise, in the context of DCDi

46

technology, Oplus showed that such technology utilizes motion adaptive noise reduction. (See, e.g., A002032-A002033 and A002746-A002747). Finally, Oplus cited to the MediaTek '329 Patent as evidence of the functionality of MDDi technology. (A002057 and A002797).

Mr. Cooper's testimony on the bare use of "motion adaptive de-interlacing" and "3:2 pulldown" does not contradict Oplus' infringement contentions. (A008077).

## J.   OPLUS DID NOT ABUSE THE DISCOVERY PROCESS

Oplus did not abuse the discovery process, but, instead, was effectively denied any meaningful discovery itself, as Vizio repeatedly refused to produce any documents or substantively respond to interrogatories. Only on July 10, 2013, after the close of fact discovery and after opening expert reports were due, did Vizio produce documents that were something other than alleged prior art. Even these, however, were product manuals and data sheets for the products already identified by Oplus. (A005544, A005578, A005596, and A005604). Vizio can hardly complain about burdensome or harassing discovery when it provided no discovery.

## K.   OPLUS' SECOND MOTION TO COMPEL WAS REASONABLE

After Oplus provided its supplemental infringement contentions, the district court issued an order June 25, 2013 recognizing them as adequate and stating that

"[t]he parties are free to file motions of any kind." (A002815). Hence, the district court invited Oplus to bring a motion if it felt that Vizio's discovery responses were inadequate. ("If you want to make a motion of any kind on their responses because you think they're inadequate, you know you can do that."). (A000387-A000388). Oplus again sought a response to its Amended Interrogatory Nos. 1 and 7, which were served on February 22, 2013, and requested identification of all Vizio televisions using the relevant HQV, DCDi, and MDDi technology, as well as sales data for such televisions. (A005544-A005546 and A009469-A009478). Vizio refused to produce that information.

Eventually, on July 23, 2013, after the close of fact discovery and while expert discovery was ongoing, Vizio provided its second supplemental interrogatory responses. (A007355-A007367). While these responses purported to identify the Vizio televisions that contained the relevant technology, they only named the televisions already identified by Oplus. (A007357 and A002735-A002810). Moreover, the supplemental responses still failed to provide any financial information for these televisions. (A007357-A007360). Because these second supplemental interrogatory responses were unsatisfactory, Oplus filed its second motion to compel, seeking an identification of the video processing chips utilized in all Vizio televisions for the relevant time frame and the relevant sales

information. (A005542 and A005544-A005546). Vizio avoided providing this basic information throughout the entirety of fact discovery.

Although Oplus suggested that it might be easier for Vizio to simply identify all products depending on how it stored the information, Oplus merely wanted substantive responses to Interrogatory Nos. 1 and 7, which it never got. (A005546). The district court denied Oplus' motion to compel at the same time it granted summary judgment to Vizio on non-infringement (A000061 and A000038). But, it did not find Oplus' second motion to compel was frivolous and Vizio never sought Rule 37 sanctions for responding to this motion.

## L.    OPLUS DID NOT ABUSE THE LITIGATION PROCESS

Contrary to Vizio's assertion, the district court did not find that Oplus had "egregiously abused" the litigation process. (Br. at 55). Rather, in finding that an award of fees was unwarranted, the district court recognized that:

- Oplus' indirect infringement allegations "had a reasonable basis in fact and law" (A000033);

- The case was "fraught with delays and avoidance tactics to some degree on both sides" (A000034);

- "Other than the three discovery motions, each instance of motion practice occurred according to normal litigation practice" (A000034);

- "[G]iven the confusing state of contention filings and discovery, [Oplus'] first two discovery [motions] were substantially justified under [Rule 37]" (A000034-A000035);

- "Oplus alleged sufficient facts to support its claims, gathered limited discovery, and lost on summary judgment, as it would have even without its misconduct" (A000034); and

- "[T]here is no evidence suggesting that Oplus's behavior stemmed from bad faith or a sufficient intent to harass." (A000035).

## M.    OPLUS' CASE WAS NOT OBJECTIVELY BASELESS

To be objectively baseless, a case must be such that no reasonable litigant could reasonably expect success on the merits. *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH,* 524 F.3d 1254, 1260 (Fed. Cir. 2008). Here, however:

- Summary judgment was denied re 35 U.S.C. § 112 (A001778-A001829);

- Summary judgment was denied re 35 U.S.C. § 101 (A001778-A001829);

- There was a favorable claim construction for Oplus (A001514-A001536);

- The district court was ultimately satisfied with Oplus' amended infringement contentions (A002815); and

- There was no evidence presented until one and a half years too late that Vizio allegedly had no sales of the accused televisions, after the Amended Complaint was filed. (A002240-A002242 and A002251).

## VIII. CONCLUSION

Finding that a case is exceptional or that conduct was vexatious does not address the issue of whether or not an award of fees is subsequently justified. Here, a highly experienced district court considered all the evidence and exercised its discretion in concluding that an award of fees under 35 U.S.C. § 285, under 28 U.S.C. § 1927, or under its inherent power was not justified.

Because Vizio has not shown that the district court abused its discretion, the decision below should be affirmed.

Dated: October 6, 2014              Respectfully submitted,

*/s/ Kara L. Szpondowski*
Raymond P. Niro
Arthur A. Gasey
Kara L. Szpondowski
Daniel R. Ferri
NIRO, HALLER & NIRO
181 West Madison Street, Suite 4600
Chicago, Illinois 60602
Tel: (312) 236-0733/ Fax: (312) 236-3137
rniro@nshn.com
gasey@nshn.com
szpondowski@nshn.com
dferri@nshn.com

*Attorneys for Plaintiff-Appellee,*
*Oplus Technologies, Ltd.*

## PROOF OF SERVICE

The undersigned hereby certifies that on October 6, 2014 I caused the foregoing **RESPONSE BRIEF OF PLAINTIFF-APPELLEE OPLUS TECHNOLOGIES, LTD.** to be electronically filed through the CM/ECF system, which will send a notice of electronic filing to counsel for all parties to the action who are registered in the CM/ECF system. Copies of the above-mention document have also been served by e-mail to the following:

Adrian M. Pruetz
Mieke K. Malmberg
Charles C. Koole
Dan Liu
GLASER WEIL FINK HOWARD AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Phone: (310) 553-3000
Fax: (310) 785-3550
apruetz@glaserweil.com
mmalmberg@glaserweil.com
ckoole@glaserweil.com
dliu@glaserweil.com

Dated: October 6, 2014          */s/ Kara L. Szpondowski*
                               *Attorney for Plaintiff-Appellee,*
                               *Oplus Technologies, Ltd.*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 11,459 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared using Microsoft Word 2010 in Times New Roman, a proportionally spaced typeface, and 14-point size font.

Dated: October 6, 2014                    */s/ Kara L. Szpondowski*
                                          *Attorney for Plaintiff-Appellee,*
                                          *Oplus Technologies, Ltd.*