UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

14-1297

OPLUS TECHNOLOGIES, LTD.,
*Plaintiff-Appelleee,*

v.

VIZIO, INC.,
*Defendant-Appellant*

SEARS HOLDINGS CORPORATION,
*Defendant.*

Appeal from the United States District Court for the Central District of California
in Case No. 12-cv-5707, Senior District Judge Mariana R. Pfaelzer

**REPLY BRIEF FOR DEFENDANT-APPELLANT
VIZIO, INC.**

Adrian M. Pruetz
apruetz@glaserweil.com
Mieke K. Malmberg
mmalmberg@glaserweil.com
Charles C. Koole
ckoole@glaserweil.com
Dan Liu
dliu@glaserweil.com
GLASER WEIL FINK HOWARD
AVCHEN & SHAPIRO LLP
10250 Constellation Blvd., 19th Floor
Los Angeles, CA 90067
Tel.: (310) 553-3000

Counsel for Defendant-Appellant
VIZIO, Inc.

Dated:  October 30, 2014

# CERTIFICATE OF INTEREST OF DEFENDANT-APPELLANT VIZIO, INC.

Pursuant to Federal Circuit Rule 47.4, counsel for VIZIO, Inc. ("VIZIO") certifies that:

1.    The full name of every party or amicus represented by me is:

VIZIO, Inc.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

AmTRAN Technology Co., Ltd., a publicly traded Taiwanese company, owns 10 percent or more of VIZIO's stock.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP

Glaser Weil Fink Howard Avchen & Shapiro LLP

Adrian M. Pruetz

Mieke K. Malmberg

Charles C. Koole

Dan Liu

Christopher Jackson

Lee Tran & Liang APLC

Lee Tran & Liang LLP

Lee Tran Liang & Wang LLP

Enoch H. Liang

Steven R. Hansen

Holland & Knight LLP

R. David Donoghue

Anna Z. Krasinski

DATED: October 30, 2014

GLASER WEIL FINK HOWARD
AVCHEN & SHAPIRO LLP

By: _____
ADRIAN M. PRUETZ

*Counsel for Defendant-Appellant*
*VIZIO, Inc.*

962166

# TABLE OF CONTENTS

Page

I.  THE DISTRICT COURT ABUSED ITS DISCRETION IN FAILING
    TO AWARD FEES TO VIZIO ...................................................................1

    A.  Oplus and its Counsel Were Vexatious Litigants Who Brought
        and Maintained this Objectively Baseless Case in Bad Faith ...........1

    B.  The District Court Was Improperly Influenced By Its Personal
        Mandate Not to Award Fees..............................................................7

II. THE DISTRICT COURT'S OWN FINDINGS SHOW OPLUS'
    CLAIMS TO BE OBJECTIVELY BASELESS AND MADE IN BAD
    FAITH.......................................................................................................9

    A.  The District Court Specifically Found that Oplus Had No
        Evidence of Direct Infringement.......................................................9

    B.  Oplus' Admissions and the District Court's Findings Show
        Oplus Had No Evidence of Indirect Infringement .........................11

    C.  The District Court Erred in Stating that VIZIO Delayed
        Informing Oplus the Accused Televisions Had Been
        Discontinued, But This Information Did Not Affect Oplus'
        Continued Pursuit of Baseless Claims ............................................14

    D.  VIZIO Did Not Sell Any Products With the Accused
        Technologies After the Filing of the Complaint .............................15

III. OPLUS CANNOT JUSTIFY ITS INCONSISTENT POSITIONS
     BELOW ...................................................................................................17

    A.  Oplus Presents Another Inconsistent Theory on Appeal to
        Distract From its Inconsistent Testimony Below Regarding the
        Absolute Value Operator..................................................................17

    B.  Oplus' Directly Conflicting Positions About the Absolute Value
        of A Linear Combination Forced VIZIO to Litigate This Case
        Through Summary Judgment ...........................................................19

    C.  Oplus' Expert Conceded that Oplus' Infringement Theories
        Were Based Entirely on Prior Art and Therefore Baseless............20

IV.  THE DISTRICT COURT FOUND THAT OPLUS MISUSED THE
     DISCOVERY PROCESS TO HARASS VIZIO ...................................... 21

V.   OPLUS COUNSEL PURPORT TO BLAME ONE JUNIOR
     ASSOCIATE FOR ALL THEIR ACTS OF MISCONDUCT .................. 26

     A.   Four Partners and Another Associate at the Niro Firm Are
          Responsible for the Abuses Identified By the District Court ......... 26

VI.  THE NORTHERN DISTRICT OF ILLINOIS CONCLUDED THAT
     OPLUS "NARROWLY ESCAPED THE IMPOSITION OF
     ATTORNEYS' FEES AND EXPENSES" BY BOTH THE
     CALIFORNIA AND THE ILLINOIS COURT ...................................... 31

VII. CONCLUSION ........................................................................... 32

# TABLE OF AUTHORITIES

Page

*Avirgan v. Hull,*
    932 F.2d 1572 (11th Cir. 1991) ................................................................ 29

*Baker Indus., Inc. v. Cerberus Ltd.,*
    764 F.2d 204 (3d Cir. 1985) ..................................................................... 29

*Baldwin Hardware Corp. v. FrankSu Enter. Corp.,*
    78 F.3d 550 (Fed. Cir. 1996) .................................................................... 29

*C&F Packing, Inc. v. Doskocil Cos., Inc.,*
    126 F.R.D. 662 (N.D. Ill. 1989) ............................................................... 30

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991) .................................................................................... 29

*Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.,*
    424 F.3d 1293 (Fed. Cir. 2005) .................................................................. 2

*Embrex, Inc. v. Serv. Eng'g. Corp.,*
    216 F.3d 1343 (Fed. Cir. 2000) .................................................................. 5

*Enmon v. Prospect Capital Corp.,*
    675 F.3d 138 (2d Cir. 2012) ..................................................................... 29

*Global-Tech Appliances, Inc. v. SEB S.A.,*
    131 S. Ct. 2060 (2011) ............................................................................... 2

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.,*
    134 S.Ct. 1744 (2014) ................................................................................ 8

*Homeland Housewares, LLC v. Hastie2Market, LLC,*
    2014 WL 4400184 (Fed. Cir. 2014) ......................................................... 14

*Ill. Computer Research, LLC v. Best Buy Stores, L.P.,*
    Case No. 1:10-cv-04298, Dkt. 84 (N.D. Ill. Dec. 7, 2012) (A11302-05) ............ 30

*In re Girardi,*
    611 F. 3d 1027 (9th Cir. 2010) ................................................................... 6

*Innovative Biometric Tech., LLC v. Lenovo (U.S.), Inc.,*
    Case No. 9:09-cv-81046, Dkt. 340 (S.D. Fla. Aug. 31, 2012) (A11306-27) ....... 30

*Joy Techs., Inc. v. Flakt, Inc.,*
    6 F.3d 770 (Fed. Cir. 1993) ....................................................................... 2

*Kilopass Tech., Inc. v. Sidense Corp.,*
    738 F.3d 1302 (Fed. Cir. 2013) .................................................................. 6

*LaPrade v. Kidder Peabody & Co., Inc.,*

146 F.3d 899 (D.C. Cir. 1998) ..................................................................29

*Lee v. First Lenders Ins. Servs., Inc.*,
    236 F.3d 443 (8th Cir. 2001) ..........................................................29

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014) ...................................................................6

*Trulis v. Barton*,
    107 F.3d 685 (9th Cir. 1995) ..........................................................8

*West Coast Theater Corp v. City of Portland*,
    897 F. 2d 1519 (9th Cir. 1990) ......................................................6

The District Court found by clear and convincing evidence, under the prior and more restrictive *Brooks Furniture* standard, that this case was exceptional due to the litigation misconduct of Oplus and its counsel, who the District Court found to be "vexatious litigants." The District Court also made numerous factual findings that show this case was objectively baseless and filed and maintained in bad faith. Unfortunately, the District Court allowed the overly restrictive *Brooks Furniture* standard, as well as its express, personal bias against awarding fees, to infect its decision to deny fees. As a result, the District Court's stated reasons for denying fees directly conflict with applicable law and its own fact-finding, and are clearly erroneous and an abuse of discretion.

## I.    THE DISTRICT COURT ABUSED ITS DISCRETION IN FAILING TO AWARD FEES TO VIZIO

### A.    Oplus and its Counsel Were Vexatious Litigants Who Brought and Maintained this Objectively Baseless Case in Bad Faith

Oplus and its counsel blame VIZIO and an unsupervised junior associate from the Niro firm for the failure of their case and the criticism of their conduct. But the record reflects otherwise:

- Oplus and its counsel filed and maintained objectively baseless indirect infringement claims against VIZIO. They knew at the time of filing that VIZIO could <u>not</u> have the scienter required for an indirect infringement

1

claim because VIZIO had no pre-filing notice of the Oplus patents and, as Oplus argued, VIZIO is not a manufacturer and had no knowledge about or access to the accused confidential video processing circuitry supplied by third parties.  (A47; A7796-99; A7802; A21); *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011) (inducement requires both knowledge of the existence of the patent and knowledge that the induced acts constitute patent infringement.); *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1312 (Fed. Cir. 2005) (contributory infringement requires  that the defendant knew that the combination for which its components were especially made was both patented and infringing).

- Oplus and its counsel brought and maintained baseless direct infringement claims against VIZIO for allegedly making, selling, offering to sell and importing the accused televisions, when they knew VIZIO did not make televisions and that the Oplus' method claims could only be infringed by "use."  (A7799); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 7774-75 (Fed. Cir. 1993) ("[A] method claim is directly infringed only by one practicing the patented method.").  In addition, the District Court found that Oplus "utterly failed to provide any evidence or factual

2

support showing that the steps of the asserted methods were performed as required to show infringement." (A26.)

- Oplus and its counsel knowingly repeat the District Court's error in stating that Oplus and the Court were unaware that the accused televisions had been discontinued until April 2013. (Oplus Br. at 10.) At the Scheduling Conference in July 2012, <u>Oplus counsel</u> advised the District Court that they didn't know whether the televisions they accused of infringement were still on sale, but "this technology moves so quickly…new TV's every six months." (A140.) VIZIO counsel responded that "the products have changed because these are TV's from a few years ago." (A153.)

- Even after Oplus counsel was *reminded* in April 2013 that the accused televisions were discontinued prior to this action, they served Amended Infringement Contentions in June 2013 and an expert report in July 2013 frivolously <u>accusing the same discontinued televisions and only four additional and also discontinued televisions</u> of direct and indirect infringement. (A2738; A2765; A2775; A2788; A7849; A7853; A7855; A7859.)

- Oplus never proffered any theory of infringement or evidence other than the bare use of "motion adaptive deinterlacing" and "3:2 pulldown" error

3

correction, techniques their expert conceded were in the prior art and that could not, without more, infringe the Oplus patents.  (A3090-91; A3097-99; A3114-15; A3123-26; A3138-39; A3155-60; A118-19.)

- Even though the undisputed record shows that VIZIO had no information about the confidential and proprietary algorithms of the third party chip suppliers, Oplus and its counsel argue that the three discovery motions they lost somehow show that VIZIO was responsible for their failure of proof in this case.  (A59-60; A339; A2107-08.)  They cannot justify their refusal to pursue discovery from the makers of the allegedly infringing chips.

- Oplus counsel cannot justify their "infringement" expert testifying that MediaTek's U.S. Patent No. 7,286,186 (the "'186 Patent") supported their infringement claim while their "validity" expert testified, to the contrary, that the '186 Patent did not disclose the method of the Oplus patents.  (A2942-44; A2971-74; A2982-85; A3138-40; A3148-51; A3155-57; A7987-88 ; A7989-90; A7996-97.)

- Oplus counsel cannot justify using one "validity" expert to testify that the Markush Group in the '842 patent includes linear combinations (to defeat indefiniteness) and another "validity" expert to testify that the Markush Group does not include linear combinations (to defeat anticipation).

4

(A7938-39, 41; A7850-51, 56-57; A7954; A7996-97.)  The District Court found that "Oplus's malleable expert testimony and infringement contentions left VIZIO in a frustrating game of Whac-A-Mole throughout the litigation."  (A32.)

- Oplus counsel does not explain why the District Court should have allowed it to fish for the identity of video processing chips in VIZIO televisions it did <u>not</u> accuse of infringement, when Oplus counsel could not explain how any of the video processing chips identified by VIZIO for the *accused* televisions infringed.  Oplus counsel never requested that VIZIO identify chipsets in discovery, but they falsely represented they did in a pretextual motion to compel after the close of discovery, with summary judgment pending.  (A26; A31.)

- Oplus and its counsel argue that their motion to compel sales information from VIZIO to support "use" damages was not frivolous, despite this Court's precedent stating that sales cannot be a basis for "use" damages. *Embrex, Inc. v. Serv. Eng'g. Corp.,* 216 F.3d 1343, 1350 (Fed. Cir. 2000).

Oplus' Brief to this Court, with its unjustified finger-pointing and false and misleading representations, shows that Oplus and its counsel have no compunction about continuing to engage in the very same tactics that caused them to be held vexatious litigants.

Under *Octane Fitness*, "an 'exceptional' case is one that stands out from the others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). *Octane Fitness* also reduced the burden of proof to obtain attorneys' fees from "clear and convincing evidence" to "preponderance of the evidence." *Id*. at 1758. This case not only meets the current standard for awarding fees under 35 U.S.C. § 285, it meets the higher standard for awarding fees under 28 U.S.C. § 1927 and the Court's inherent power. Oplus and its counsel shirked all responsibility to conduct a pre-filing investigation or relevant discovery, and maintained claims for direct and indirect infringement they did not, and knew they could not, support. Where "the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith." *See Kilopass Tech., Inc. v. Sidense Corp.,* 738 F.3d 1302, 1318 (Fed. Cir. 2013) (citations omitted).

A fee award is appropriate under Section 1927 where a party "recklessly or intentionally misrepresents facts" or files a case "that is both baseless and made without a reasonable and competent inquiry." *In re Girardi*, 611 F. 3d 1027, 1061 (9th Cir. 2010); *see also West Coast Theater Corp v. City of Portland*, 897 F. 2d 1519, 1528 (9th Cir. 1990) (granting sanctions under Section 1927 where plaintiff

6

"recklessly proceeded with litigation despite a complete lack of factual support.").
The District Court's decision not to award any fees to VIZIO, after detailing for 15
pages the serious misconduct of Oplus and its counsel and their complete failure to
provide <u>any</u> factual or legal support for their claims, was based on clearly
erroneous assertions that were unsupported by the record.  (A19-33.)  The
conclusion is inescapable that the District Court's personal bias against awarding
fees improperly influenced its decision.

### B.      The District Court Was Improperly Influenced By Its Personal Mandate Not to Award Fees

Oplus argues that the "centerpiece" of VIZIO's appeal is the District Court's
"personal mandate never to award fees" and that raising this issue is "unjustified"
and a "personal attack" on the District Court.  (Oplus Br. at 27-28.)  But as
VIZIO's Principal Brief demonstrates, the "centerpiece" of VIZIO's appeal is the
*litigation misconduct* that led the District Court to find the case exceptional and to
label Oplus and its counsel "vexatious litigants" and the *baseless infringement
claims* they filed without investigating and never supported with any evidence.
Despite these facts, the District Court itself stated *four times***:** "I don't give
attorney's fees"; "I have not granted attorneys' fees"; "I just do not grant them"; " I
don't give attorneys' fees."  (A500; A505; A518.)

These statements reflect a personal bias not to award attorneys' fees despite

7

the circumstances, a viewpoint VIZIO is justified in describing as unreasonable and arbitrary. Judge Pfaelzer has been on the bench since 1978 and she is a well-respected judge with a well-deserved reputation for deciding cases correctly. And as Oplus points out, she is very experienced in patent cases and has authored more than 100 reported patent decisions. (Oplus Br. at 28-29.) Yet, Oplus came up with only <u>two</u> patent cases in 36 years in which Judge Pfaelzer awarded attorneys' fees, and neither is recent. (*Id.* at 28.)

VIZIO respectfully submits that there is a reason Congress enacted the fee shifting statutes, and Judge Pfaelzer's repeated representation that she does not award attorneys' fees reflects a personal inclination not driven by the facts or the law, and contrary to the purpose of the fee-shifting statutes. The failure to award fees in this very exceptional case was an abuse of discretion. *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995).

"The abuse of discretion standard does not prevent an appellate court's correction of a district court's legal or factual error: 'A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.,* 134 S.Ct. 1744, 1748, n. 2 (2014) (citations omitted). The District Court's failure to award fees here was based on both "an erroneous view of the law" and "a clearly erroneous assessment of the evidence."

8

## II.    THE DISTRICT COURT'S OWN FINDINGS SHOW OPLUS' CLAIMS TO BE OBJECTIVELY BASELESS AND MADE IN BAD FAITH

### A.    The District Court Specifically Found that Oplus Had No Evidence of Direct Infringement

The District Court found that Oplus made no pre-filing investigation and presented no evidence of direct infringement (A522; A50), yet Oplus cites the same irrelevant VIZIO service and user manuals here that the District Court found did not contain any details of the methods used in the accused chipsets:

> [T]he evidence shows only that the service manuals are sufficient to allow troubleshooting of the television components. . . . Oplus points to no evidence that shows that the service manuals describe the methods and algorithms used by the chipset.

(A50.)

> Evidence that a user manual exists and that an unknown party tested the television for FCC compliance is not sufficient to create a genuine dispute of material fact as to whether Vizio itself performed the claim limitation of using the accused method with an interlaced signal.

(A46-47.)

Oplus cannot overcome its complete lack of proof that any VIZIO television performed the **patented** method.

The District Court also found that "Oplus knew throughout the litigation that other methods were available to accomplish interlacing and error correction."

(A31.)  While Oplus argues here that it didn't "ignore the availability of alternative algorithms," the excerpt Oplus cites states only that HQV is a motion adaptive deinterlacing technique—a  technique Oplus' expert testified was known in the prior art.  (A2022; Oplus Br. at 42.)  Moreover, Oplus admitted that the so-called "testing" by its expert that "confirmed" infringement—*simply looking at the television screen*—in fact did <u>not</u> prove infringement:

> Oplus counsel:  We are sure our patents are being infringed because we've had our experts go ahead and use and operate the television sets--…
>
> The Court:  Well, what I'm saying to you is they could, just by turning it on and looking at the chips or the manuals – describing what happens with the television – they can just by looking at that tell that your patents have been infringed. . . . How do you know that your patents are being infringed in those circumstances that you're describing?
>
> Oplus counsel:  ***Well, to a certainty, we do not***. . . . it is his expert opinion that that is - - that is the most likely way in which that -- those errors, those moiré errors that are shown in the screen shots --
>
> The Court:  ***But it could be done some other way, couldn't it?***
>
> Oplus counsel:  ***Conceivably, yes.***

(A439-41 (emphasis added); A31.)

Oplus' argument that it "did not have to disprove the use of other video processing algorithms" misses the point.  (Oplus Br. at 42.)  In a sea of alternatives, Oplus had <u>no</u> evidence that the ***patented*** method of deinterlacing and error correction was used in any VIZIO television.  And contrary to Oplus' argument,

10

the District Court did not grant summary judgment solely because VIZIO had stopped selling the accused televisions.  The District Court found that "Oplus utterly failed to provide any evidence or factual support showing that the steps of the asserted methods were performed as required to show infringement."  (A26.)

"Although Oplus had admitted numerous times during the case that other methods and algorithms could perform deinterlacing and error correction, Oplus argued that the existence of an interlaced signal input and film-source detection capabilities in Vizio's televisions necessarily showed infringement of the asserted claims." (A25-26.)  "Oplus' opposition…shows that Oplus does not even mention several steps of the claimed method."  (A26.)  These findings cannot be reconciled with the District Court's decision not to award fees because "at the time of filing of the complaint" Oplus' claims "were not objectively baseless."  (A33.)  Oplus' arguments were frivolous from start to finish.

## B.  Oplus' Admissions and the District Court's Findings Show Oplus Had No Evidence of Indirect Infringement

Oplus counsel admitted that VIZIO had no notice of the Oplus patents prior to the filing of this action.  (A47.)  In July 2012, at the Scheduling Conference, Oplus counsel admitted that they did not investigate whether the televisions they accused of infringement were still on sale when they filed this action.  (A140.) Oplus counsel also admitted that, based on their prior case against VIZIO, they

11

knew VIZIO lacked the knowledge of infringement required for indirect

infringement:

- VIZIO "is not a manufacturer. It has no knowledge or involvement in design and manufacturing…[I]t is VIZIO that has no understanding of how its products were designed, developed or work." (A7799; A21.)

- "Plainly, none of the discovery to be had about the technical details of such accused products can be obtained in California." (A7802.)

- "California really has no involvement in the technical issues before the Court." (A7797.)

- VIZIO's "[s]uppliers (all of whom are based in China or Taiwan) decide what designs to use and how to use them…Vizio doesn't select or approve the video processing circuitry, for example, which [Oplus claims] is used to practice the patents at issue." (A7798; A21.)

Now, contrary to these admissions, Oplus claims that "VIZIO alone is

responsible for developing, reviewing and testing technical designs for its

products." (Oplus Br. at 43.) But the excerpt Oplus cites, dated long after this

action was filed, is a general statement unrelated to any of the accused products

that was rejected by the District Court. (A9619.)

As the District Court found, the evidence presented by Oplus "does not

indicate that Vizio knows the details of the chipset operations, including the signal

processing algorithms." (A46.) To the contrary, the District Court found on an

undisputed record that "the methods and algorithms used by the chipsets are kept

12

as trade secrets by the chip manufacturers."  (A50.)  "Vizio itself does not

investigate the video processing technology used in its televisions other than by

watching a television set before it is distributed" and "knows only basic

information regarding each chipset selected by the ODM and does not understand

how the accused chipsets work."  (A45.)

     Accordingly, the District Court also found that VIZIO did not indirectly

infringe because Oplus did not provide <u>any</u> evidence that VIZIO knew the video

processing method used by the chipsets in the accused televisions, or that the

chipsets used the patented methods.  (A50 ("Oplus points to no evidence that

shows that the service manuals describe the methods and algorithms used by the

chipset.  In addition, Oplus provides no evidence of Vizio's subjective belief

regarding infringement.").)

     Despite Oplus' admissions and the District Court's findings, the District

Court denied fees, stating: "The Court ultimately disagreed with Oplus' argument

that Vizio could be liable for indirect infringement without knowledge of its

products' signal processing methodology, but the argument had a reasonable basis

in fact and law."  (A33.)  This is a clearly erroneous conclusion that cannot be

reconciled with the facts or the law.  *Global-Tech,* 131 S. Ct. at  2068 (indirect

infringement requires knowledge that the acts constitute infringement); *Cross Med.*

*Prods.,* 424 F.3d at 1312 (contributory infringement requires knowledge that the

13

combination for which its components were especially made was both patented and infringing).  As Oplus presented no admissible evidence of infringement, an award of attorneys' fees is appropriate.  *Homeland Housewares, LLC v. Hastie2Market, LLC,* 2014 WL 4400184 (Fed. Cir. 2014).

C.    **The District Court Erred in Stating that VIZIO Delayed Informing Oplus the Accused Televisions Had Been Discontinued, But This Information Did Not Affect Oplus' Continued Pursuit of Baseless Claims**

Although Oplus and its counsel know it is not true, they take advantage of the District Court's mistake and argue that they were unaware that VIZIO had stopped selling the accused VIZIO televisions prior to the filing of the Complaint, until April 2013.  (Oplus Br. at 10.)  In fact, in July 2012, at the Scheduling Conference, <u>Oplus counsel</u> told the District Court:

> Oplus counsel: My guess would be that VIZIO is still making infringing devices.  As to whether or not it's still making the devices that were specifically identified in the Complaint at this date, I don't know.  This technology moves so quickly.
>
> The Court: It certainly does.
>
> Oplus counsel: New TV's every six months.  New cell phones every three weeks.  So I don't know about the ones that have specifically been accused as to whether or not they are still being provided by VIZIO.

(A140.)

962166

Following this interchange, ***VIZIO counsel confirmed that "the products have changed because these are TV's from a few years ago."*** (A153.)

Even <u>after</u> VIZIO reminded Oplus in April 2013 that VIZIO had stopped selling the accused televisions before Oplus filed suit, Oplus and its counsel were undeterred—they served Amended Infringement Contentions two months later, in June 2013, and an expert report in July 2013, accusing the <u>same</u> discontinued televisions of direct and indirect infringement. (A2738; A2765; A2775; A2788; A7849; A7853; A7855; A7859.) As yet another example of their bad faith, they refused to withdraw these baseless claims, requiring VIZIO to move for summary judgment of noninfringement. (A2816-17; A2828-29.)

### D. <u>VIZIO Did Not Sell Any Products With the Accused Technologies After the Filing of the Complaint</u>

Continuing their practice of citing to evidence that does not support their statements, Oplus and its counsel argue that VIZIO continued to sell televisions with the accused chipsets after the filing of the Complaint, even though they never accused any. (Oplus Br. at 10.) These arguments are not supported by the cited evidence and were rejected by the District Court:

- The alleged "publicly available information suggest[ing] that Vizio had not identified at least 70 additional televisions using MDDi, DCDi, or HQV technologies" is an exhibit list from an earlier case brought by

15

Oplus counsel against VIZIO that provides <u>no</u> information about the specific technologies Oplus accused.  (A9521-39.)  Moreover, despite knowing of these televisions from the prior case, Oplus never accused them of infringement in this case.  (A2738; A2765; A2775; A2788.)

- Oplus' argument that VIZIO "never searched for responsive documents" misrepresents the testimony.  (Oplus Br. at 10.)  The VIZIO employee said he was "not aware of any" documents that would discuss the video processing technology embedded in a single television model, and further, that he had no reason to believe such documents existed.  (A9573.)  The District Court denied Oplus' motion to compel, finding VIZIO complied with its discovery obligations.  (A59-60.)

- Oplus mischaracterizes so-called "evidence" about the MT5395 chip, a MediaTek chip never shown by Oplus to perform the patented method, allegedly used in a VIZIO television offered for sale post-filing.  (Oplus Br. at 11,43.)  None of this inadmissible hearsay supports Oplus' conclusion.  First, the online eBay auction listing cited by Oplus does not mention MDDi.  (A9597-99; A9601.)  Second, Oplus cites an online discussion forum and a product review of a "Google TV," not a VIZIO television.  (A9603-07; A9611-12.)  Finally, the Taiwanese website granting MediaTek an "Innovative Product Award" cited by Oplus does

16

not mention VIZIO televisions (A9616-17), but more importantly, contradicts the publicly available information from the only reliable source—MediaTek, the manufacturer of the MT5395 chip—which indicates that the MT5395 chip contains ME/MC technology, not MDDi technology. (A5315.)  In fact, the only reference to MDDi on Mediatek's entire website is to chips used in DVD and Blu-ray players, not televisions.  (A10515-18.)

These "citations" and others are what the District Court had in mind when it found that "Oplus regularly cited to exhibits that failed to support the propositions for which they were cited."  (A32.)  As the District Court found, "Vizio has not sold any allegedly infringing Vizio television incorporating the allegedly infringing chipsets since the date that Oplus filed its complaint" and "Oplus has offered no evidence that Vizio sold any allegedly infringing product after the date of filing the complaint."  (A48.)

## III.    OPLUS CANNOT JUSTIFY ITS INCONSISTENT POSITIONS BELOW

### A.    Oplus Presents Another Inconsistent Theory on Appeal to Distract From its Inconsistent Testimony Below Regarding the Absolute Value Operator

It is undisputed that Oplus claimed the accused products infringed because they

17

allegedly practiced the "evaluating logical operations" step of the '842 Patent using the method described in MediaTek's '186 patent. (A7938-39, 41; A7850-51, 56-57.) It is also undisputed that Oplus' expert witness testified that, to the contrary, the '186 Patent does not meet the "evaluating logical operations" step of the '842 Patent. (A7987-88 ; A7989-90; A7996-97.) From this undisputed evidence, the District Court found that "Oplus's infringement contentions cite a patent to show infringement, yet their expert testifies that the same patent did not disclose the methods of Oplus's patents." (A14.)

Now, Oplus and its counsel present a brand new theory of infringement, claiming they relied on combining the '186 Patent with another MediaTek patent that also does not practice the asserted claims, U.S. Patent No. 6,456,329 (the "'329 Patent"), to show that the video processing algorithms used in MediaTek chips released **more than ten years after the filing dates** of these patents infringed the asserted claims. (Oplus Br. at 44-45.) Not only does the '329 Patent fail to mention or suggest the "evaluating logical operations" step required by the '842 Patent (A3272-74), Oplus' expert witness stated that Oplus' infringement theory was based on MediaTek "tout[ing] its MDDi" feature" in 2003 (A6394), even though the '329 Patent was not acquired by MediaTek until 2004. (A3274.) Thus, Oplus' new argument here is as frivolous and inconsistent as its arguments below.

18

### B.    Oplus' Directly Conflicting Positions About the Absolute Value of A Linear Combination Forced VIZIO to Litigate This Case Through Summary Judgment

The directly conflicting positions taken by Oplus' two validity "experts" could not be clearer, as the District Court found.  (A25.)  When opposing VIZIO's first summary judgment motion, Mr. Ferraro, Oplus' first expert, took the position that "an absolute value of a linear combination is a linear combination" and further stated that he "disagree[d] with [VIZIO's expert's] conclusion that '[a]n absolute value of a linear combination is not a linear combination." (A1663.)  Months later, after defeating VIZIO's summary judgment motion for indefiniteness, a new expert, Mr. Cooper, submitted an expert report that purported to distinguish two prior art references from the '842 Patent on the ground that the absolute value of a linear combination was not a linear combination.  (A7987-88; A7989.)

Despite being rebuked for this tactic, Oplus once again cites nonspecifically to 8 pages of deposition testimony that do not show, as Oplus claims, that "Mr. Cooper explained why there was no discrepancy" between his and Mr. Ferraro's opinions.  (Oplus Br. at 46 (citing A9931-94).)  To the contrary, Mr. Cooper nonsensically stated that Mr. Ferraro's *disagreement* with VIZIO's expert actually meant that Mr. Ferraro *agreed* with VIZIO's expert!  (A9934 ("In that he disagrees with the conclusion of [VIZIO's expert] that an absolute value of a linear

19

combination is not a linear combination, I think he would, by that disagreement, also be saying that an absolute value of a linear combination is not a linear combination.").)

This District Court relied on the testimony of Oplus' first expert in denying VIZIO's early summary judgment motion of indefiniteness of the '842 Patent. (A1790-91.)  Had Mr. Ferraro not testified to a position later repudiated by Mr. Cooper, the case with respect to the '842 Patent would have ended nine months earlier.

### C.     Oplus' Expert Conceded that Oplus' Infringement Theories Were Based Entirely on Prior Art and Therefore Baseless

Oplus does not dispute that the techniques of motion adaptive deinterlacing and 3:2 pulldown existed in the prior art, but instead claims that it "did far more than cite generally" to these two technologies.  (Oplus Br. at 46.)  The District Court specifically found otherwise:

> Although Oplus had admitted numerous times during the case that other methods and algorithms could perform deinterlacing and error correction, Oplus argued that the existence of an interlaced signal input and film source detection capabilities in Vizio's televisions necessarily showed infringement of the asserted claims…[Oplus] utterly failed to provide any evidence or factual support showing the steps of the asserted methods were performed as required to show infringement.

(A25-26.)  Oplus' reliance on generic techniques in the prior art to prove infringement was frivolous.

20

## IV.    THE DISTRICT COURT FOUND THAT OPLUS MISUSED THE DISCOVERY PROCESS TO HARASS VIZIO

Oplus tries to shift the focus to VIZIO by completely misrepresenting the record of discovery and discovery orders in this case, a typical tactic of the Niro firm as noted by the District Court. (A32 ("Oplus consistently twisted the Court's instructions and decisions.  Clever wording and implication cannot conceal Oplus's attempts to mislead the Court.").)  Oplus brought two discovery motions and opposed a motion for protective order.  Oplus lost all of them.  (A59-60; A339; A2107-08.)  Far from finding Oplus' position on these the motions "justified," as Oplus counsel argues, Oplus counsel were rebuked by the District Court for their misconduct in bringing them.  (A29-31 ("Oplus's final motion to compel discovery was, like the prior discovery motions, ill-timed, burdensome, and inappropriate.").)

First, there was never any finding below that VIZIO failed to meet its discovery obligations, or even that VIZIO, who did not manufacture the accused products, had any information that would support or refute Oplus' infringement claims.  To the contrary, the District Court found that "Vizio knows only basic information regarding each chipset selected by the ODM and does not understand how the accused chipsets work."  (A45.)  As the District Court stated, "[E]ven after Vizio became aware of the patents in suit, it never became aware of the actual method and algorithm used by the allegedly infringing chipsets to perform the

deinterlacing and error correction functions." (A48.) "[T]he parties do not dispute that the methods and algorithms used by the chipsets are kept as trade secrets by the chipset manufacturers." (A50.) As noted above, Oplus counsel knew and admitted, shortly after filing this case, that VIZIO had no information about or understanding of the accused video processing circuitry supplied by third parties. (A7798-99; A21.)

Yet, Oplus counsel declined to pursue discovery from the only parties with information about how the video processing chips accused of infringement worked, the chip manufacturers:

> Oplus neglected to pursue third-party discovery to support its initial claim of infringement. Oplus declined to accept a confidentiality agreement in order to allow their expert access to the source code for an allegedly infringing MediaTek chipset. Oplus sought no information from the third party manufacturers of the other two accused chipsets. Instead, in the face of VIZIO's denial and Oplus' own argument before the MDL panel, Oplus continued to insist that Vizio must have evidence of its alleged infringement in its possession.

(A24.)

Oplus' only excuse for not pursuing the discovery critical to its infringement claims was that each of the manufacturers "made objections to the subpoenas," a routine occurrence in litigation. (Oplus Br. at 12.) Oplus provides no explanation for its failure to address these objections and pursue the only discovery that could support or refute its claims.

As the District Court correctly held: "Oplus misused the discovery process to

22

harass Vizio by ignoring necessary discovery, flouting its own obligations, and repeatedly attempting to obtain damages information to which it was not entitled." (A29.)  The District Court also correctly held that Oplus implemented these tactics from the start: "At the scheduling conference, Oplus began implementing its abusive discovery strategy: avoid its own litigation and discovery obligations while forcing its opponent to provide as much information as possible about Vizio's products, sales and finances." (*Id.*)

Oplus disingenuously argues to this Court that "Vizio produced no discovery of its communications with the chipmakers who supplied it with chips used in its televisions."  (Oplus Br. at 12.)  But as the District Court found on undisputed facts, "ODMs select, procure, and maintain the chipsets used for video processing from chipset manufacturers.  Vizio itself does not investigate the video processing technology used in its televisions other than by watching a television set before it is distributed." (A45.)

The District Court denied Oplus' first motion to compel because Oplus' Infringement Contentions were deficient, noting that that the "morass of unstructured discovery caused by these inadequate infringement contentions" did not justify allowing the discovery Oplus sought.  (A2108.)  But rather than amend its Infringement Contentions, Oplus counsel wrongfully subpoenaed <u>its own files</u> for documents "counsel had accessed under a prior protective order." (A23; A30.)

23

When VIZIO moved for protection from this violation of the protective order,

Oplus protested to the District Court that it was entitled to "information about

sales, notice of the patents-in-suit, and VIZIO's use of specific products"

regardless of the state of its Infringement Contentions.  (A23.)  As the District

Court found, "Oplus protested that if the Court's order prevented Oplus from

obtaining this information, the order was "the epitome of rogue." (*Id.*)

The District Court agreed with VIZIO that "Oplus essentially ignored the

April 3rd order [denying Oplus' motion to compel] and subpoenaed itself for files

it had in its possession as a result of a retention clause in a previous case," violating

the orders of both courts.  (A23.)  The District Court found the excuses of Oplus

counsel untruthful: "Although Oplus asserts that it has relied only on publicly

available information, it has clearly not done so."  (A30.)  "If no review had

occurred, Oplus could not have known what narrow subset of discovery to

seek…Oplus' claim that it issued the subpoena without using any knowledge by

three attorneys as to the content of the discovery sought simply strains credulity."

(A30-31.)

Oplus' final motion to compel discovery was severely criticized by the

District Court:

> Oplus's final motion to compel discovery was, like the prior
> discovery motions, ill-timed, burdensome, and inappropriate.
> In its final attempt to gain Vizio's business and financial
> information, Oplus blatantly misinterpreted its own prior

> discovery requests in an attempt to gain the same information the Court had previously refused to compel. Oplus knew it was not entitled to the information it wanted. Instead Oplus requested everything and falsely represented to the Court the scope of its own request.

(A31.)

Oplus sued VIZIO over discontinued televisions and technologies because it performed no pre-filing investigation, and simply knew some TV model numbers from its prior case against VIZIO on different patents. (A522; A9521-39.) Even after Oplus was told by VIZIO for the second time that the televisions it accused were no longer on sale by the time this case was filed, Oplus served Amended Infringement Contentions that frivolously continued to assert direct and indirect infringement against these same discontinued televisions—adding four more discontinued television models. (A2738; A2765; A2775; A2788.) Notably, Oplus did not accuse any of the also-discontinued television models mentioned in its brief to this Court as "infringing." (Id.; A9521-39.)

The District Court found that "Vizio has not sold any allegedly infringing Vizio television incorporating the allegedly infringing chipsets since the date that Oplus filed its complaint." (A48.) The District Court found all of the VIZIO discovery responses Oplus complains of to be sufficient, and denied Oplus' final motion to compel. (A59-60.) In contrast, the District Court found that "Oplus's statements in the motion to compel were seriously contradictory and

unreasonable." (A26.)  With respect to the accused products, "Oplus identifies no evidence showing Vizio's response was not accurate" and "Oplus admits that the financial information [it sought] is irrelevant." (A59-60.)

## V.    OPLUS COUNSEL PURPORT TO BLAME ONE JUNIOR ASSOCIATE FOR ALL THEIR ACTS OF MISCONDUCT

### A.    Four Partners and Another Associate at the Niro Firm Are Responsible for the Abuses Identified By the District Court

Oplus counsel make no attempt to address their many abuses identified by the District Court.  Instead, taking the low road, they argue that all of the acts of litigation misconduct that caused the District Court to label the case exceptional and Oplus counsel as vexatious litigants were committed solely by one junior associate on their team, Gabriel Opatken—and not by the four partners in charge of the case, Ray Niro, Sr., Arthur Gasey, Kara Szpondowski and Paul Gibbons, or another associate with a larger role, Daniel Ferri.  In fact, Opatken appeared only twice before the District Court, at the initial scheduling conference and one discovery hearing (A132-33; A317-18), and the District Court specifically stated that his behavior would not be a consideration in its decision whether to award fees – "I don't want to hold against your firm what I regarded as arrogant behavior on the part of the lawyer who appeared before me." (A518.)

26

And as the facts of record reveal, the District Court did not attribute any of

the serious acts of misconduct committed by Oplus counsel to Opatken alone:

- "Oplus certainly abused and twisted its statements of law to the Court." (A31.)

-  "Oplus consistently twisted the Court's instructions and decisions." (A32.)

- "Oplus regularly cited to exhibits that failed to support the propositions for which they were cited." (*Id.*)

- Disavowing its own expert's statement was "merely one example of Oplus' strategic manipulation of the facts and evidence provided to the Court." (*Id.*)

- "Oplus also employed another strategy for avoiding undesirable facts: ignore them.  When Oplus had no evidence of infringement of one element of a claim, it simply ignored that element and argued another." (*Id.*)

- "Oplus's malleable expert testimony and infringement contentions left VIZIO in a frustrating game of Whac-A-Mole throughout the litigation."  (*Id.*)

The District Court also found that "Oplus's other stunts…only further

fueled the harassing and vexatious nature of the litigation."  (A32-33.)  But there is

no evidence that Opatken, a junior associate, was the architect of all this

wrongdoing.  Gibbons signed the claim construction briefs.  (A1170-71; A1228.)

Szpondowski and Ferri handled the claim construction hearing. (A1513.)

Szpondowski signed the brief opposing VIZIO's summary judgment motion for

indefiniteness.  (A1567.)  Szpondowski and Gibbons handled the hearing.

(A249-50.)  Gasey signed the briefs opposing VIZIO's motions for summary

judgment of noninfringement and invalidity.  (A5819; A6245.)  Ferri signed the

evidentiary declarations.  (A5855; A6295.)  Gasey and Gibbons handled the

hearing.  (A395-96.)  Ferri signed the brief and evidentiary declaration opposing

VIZIO's motion for attorneys' fees.  (A8082-83; A8096.)  Niro and Szpondowski

handled the hearing.  (A490-91.)  Fact depositions were handled by Ferri and

Szpondowski.  (A7811-12; A7817-18; A8035-36.)  The only expert deposition was

handled by Szpondowski.  (A7992-93.)

That Oplus counsel attempt to make Opatken the scapegoat for all of their

misconduct is disgraceful.  Moreover, if the misconduct had been the work of this

one junior associate, the Niro partners should be sanctioned for completely

abandoning their professional responsibility to supervise him.  But the District

Court's order finding Oplus counsel to be "vexatious litigants" involves the entire

Niro team, and particularly the four partners.  This is the group that consistently

misrepresented the facts, the law and the court's instructions and decisions; cited to

exhibits that failed to support the propositions for which they were cited; ignored

relevant facts; and presented changing and inconsistent expert testimony and

infringement contentions.  (A31-32.)

Oplus counsel also misrepresent Federal Circuit precedent in arguing that 28

U.S.C. § 1927 only focuses on the conduct of individual lawyers and not on law

firms.  It focuses on both.  *See, e.g., Baldwin Hardware Corp. v. FrankSu Enter. Corp.*, 78 F.3d 550, 561 (Fed. Cir. 1996) (affirming sanctions against a law firm and counsel under Section 1927).  The Ninth Circuit has not addressed this issue, but the Second, Third, Eighth, Eleventh, and D.C. Circuits also have held that law firms can be sanctioned under Section 1927.  *Enmon v. Prospect Capital Corp.,* 675 F.3d 138, 147 (2d Cir. 2012) (affirming sanctions against the "firm as a whole"); *Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204, 206 (3d Cir. 1985) (affirming award of attorneys' fees against the law firm); *Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443, 444 (8th Cir. 2001) (affirming imposition of sanctions against the law firm); *Avirgan v. Hull,* 932 F.2d 1572, 1582 (11th Cir. 1991) ("[a] court may assess attorney's fees against litigants, counsel, and law firms…"); *LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 900 (D.C. Cir. 1998) (affirming sanctions against law firms).  The Court may also sanction Oplus and its counsel under its inherent power.  *See e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) (holding that the inherent power of federal courts includes the power to sanction attorney or party misconduct for fees and costs).

The Niro firm has a disturbing pattern and practice of employing vexatious litigation tactics to drive up litigation costs and avoid timely disposition of cases on the merits, solely to extort settlements.  They have previously been sanctioned by district courts under Section 1927 for the <u>same misconduct</u> they committed here:

29

failing to conduct adequate pre-filing investigations or to pursue third-party discovery necessary to prove infringement, and continuing to maintain meritless patent infringement suits despite strong evidence that no case could or should be maintained. *See*, *e.g.*, *Ill. Computer Research, LLC v. Best Buy Stores, L.P.,* Case No. 1:10-cv-04298, Dkt. 84 at 2-4 (N.D. Ill. Dec. 7, 2012) (A11302-05); *Innovative Biometric Tech., LLC v. Lenovo (U.S.), Inc.*, Case No. 9:09-cv-81046, Dkt. 340 at 7-8, 14-15 (S.D. Fla. Aug. 31, 2012) (A11306-27), *aff'd* 2014 WL 1929396 (Fed. Cir. May 15, 2014); *see also C&F Packing, Inc. v. Doskocil Cos., Inc.*, 126 F.R.D. 662, 679, 681, 687, n. 17 (N.D. Ill. 1989) (sanctioning Ray Niro, Sr. and other firm attorneys for "flouting a court order," "reaching new extremes in the art of taking excerpts out of context," "distorting the record by selective quotation," and conduct "evidenc[ing] an arrogance and contemptuousness that can only be characterized as an all-out attempt to win the case without any regard for professionalism, courtesy or legal niceties").

For all the reasons stated above, sanctions under Section 1927 and the Court's inherent power are warranted.

**VI.  THE NORTHERN DISTRICT OF ILLINOIS CONCLUDED THAT OPLUS "NARROWLY ESCAPED THE IMPOSITION OF ATTORNEYS' FEES AND EXPENSES" BY BOTH THE CALIFORNIA AND THE ILLINOIS COURT**

Oplus argues that after VIZIO's request for fees was denied in the Central District of California, VIZIO sought "many of the same fees" in the Northern District of Illinois.  (Oplus Br. at 7, 38.)  This was at the District Court's direction – after the District Court held that "Oplus's allegations against Sears were objectively baseless at the time Oplus filed its first amended complaint" and that Oplus' motion to the MDL panel, attempting to return the case to Illinois after transfer was granted, "ignored well-settled law," it further held that "[s]ince the case against Sears remains pending in the Northern District of Illinois. . . that forum would be the most appropriate venue in which to seek sanctions for claims against Sears."  (A33.)

The attorneys' fees and expenses VIZIO sought in Illinois were limited to those VIZIO incurred on behalf of Sears, its customer and indemnitee, and itself, in the Illinois court and MDL proceeding, because of Oplus' frivolous claims against Sears.  (A11169; A11188.)  Contrary to Oplus' argument, the Northern District of Illinois never held that VIZIO's fee motion was "unreasonable."  (Oplus Br. at 39.) The passage Oplus mischaracterizes came from the Illinois magistrate judge, who

31

opined that he found the <u>amount</u> of fees sought by VIZIO for the Illinois portion of the case "unreasonable." (A11074-75).

Also contrary to Oplus' argument, the Illinois District Court found that Oplus "narrowly escaped the imposition of attorneys' fees and expenses (by both the California court as well as [the Illinois] court)," that Oplus' conduct before both courts was "questionable," and that their "tactics in this litigation have been vexatious and meet the standard for litigation misconduct." (A11300.)

## VII.    CONCLUSION

For all the foregoing reasons, this Court should reverse the portion of the District Court's Order declining to award attorney's and expert fees to VIZIO. Alternatively, this Court should remand this case to the District Court with instructions to reconsider the portion of its order declining to award fees.

DATED:  October 30, 2014          GLASER WEIL FINK HOWARD
                                  AVCHEN & SHAPIRO LLP

                                  By: _Adrian M. Pruetz_____

                                      ADRIAN M. PRUETZ

                                      *Counsel for Defendant-Appellant*
                                      *VIZIO, Inc.,*

32

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2014, the foregoing was electronically filed using the Court's CM/ECF system. I further certify that on the same date a copy of the foregoing was served electronically via the Court's CM/ECF system on the counsel listed below:

Raymond P. Niro
rniro@nshn.com
Arthur A. Gasey
gasey@nshn.com
Kara L. Szpondowski
szpondowski@nshn.com
Daniel R. Ferri
dferri@nshn.com
NIRO, HALLER & NIRO, LTD.
181 W. Madison St., Suite 4600
Chicago, IL 60602-4515

*Counsel for Plaintiff-Appellee*
*Oplus Technologies, Ltd.*

DATED: October 30, 2014            GLASER WEIL FINK HOWARD
                                   AVCHEN & SHAPIRO LLP


                              By: _____
                                  ADRIAN M. PRUETZ

                                  *Counsel for Defendant-Appellant*
                                  *VIZIO, Inc.*

33

962166

# CERTIFICATE OF COMPLIANCE

Counsel for Defendant-Appellee VIZIO, Inc. hereby certifies that the brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 6,987 words as counted by the word processing program used to prepare the brief, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

DATED: October 30, 2014              GLASER WEIL FINK HOWARD
                                     AVCHEN & SHAPIRO LLP


                              By: _____
                                     ADRIAN M. PRUETZ

                                     *Counsel for Defendant-Appellant*
                                     *VIZIO, Inc.*

34

962166